## FAUGHT v. CITY OF SAPULPA.

No. 21114. Opinion Filed May 6, 1930.

Rehearing Denied Oct. 7, 1930.

Grady Lewis, for plaintiff in error.

C. B. Rockwood, City Atty., and Eugene Jordan, for defendant in error.

ANDREWS, J. The parties appear here as they appeared in the trial court, and they will be referred to as plaintiff and defendant, respectively.

The plaintiff filed a petition in the district

court of Creek county against the defendant and alleged, among other things, that $259,000 in funding bonds theretofore issued by the city of Sapulpa and repurchased by it with a portion of its sinking fund were void. The prayer was that the city of Sapulpa be perpetually enjoined from selling or in any wise disposing of the bonds.

It was further alleged that on August 3, 1929, the American National Bank of Sapulpa commenced a suit against the city of Sapulpa for the purpose of securing a judgment against the city upon unpaid warrants in the sum of $258,299.84; that on the day the petition was filed the defendant entered its appearance in the cause; that a purported trial was had, at the conclusion of which judgment was rendered against the defendant in the amount sued for; that on September 7, 1929, the defendant filed its application and petition to fund its outstanding judgment indebtedness, including the judgment aforesaid, and that on the same day a purported judgment was rendered in said cause adjudging and decreeing that the said indebtedness should be funded.

The bonds were alleged to be null and void for the following reasons: First, that the warrants sued on were void for the reason that they were in excess of the income and revenue for the years in which they were issued, and that since the warrants were void, the judgment thereon was void; second, that the judgment on the warrants was void for the reason that the same was secured by fraud and collusion in that the defendant entered its appearance so that judgment might be rendered against it on the date of the filing of the suit; third, that the funding bonds were void for the reason that a levy could not be made to retire the first interest coupon as the same became due; fourth, that the amount of the funding bond issue when added to the existing bonded and judgment indebtedness exceeds five per centum of the assessed valuation of the city for the year previous to the issuance of the funding bonds.

The answer of the defendant denied the allegations of the petition and asserted the 30-day limitation as a bar to the action. It alleged that the judgment of the district court was res adjudicata as to the validity of the warrants sued on, that the judgment of the district court in the funding bond procedure was res adjudicata, and that it invested its money in the bonds in good faith after they had been issued and delivered to the judgment creditor.

The case was tried to the court upon an agreed statement of facts. The court rendered judgment in favor of the defendant, and plaintiff appealed to this court.

Plaintiff, under the authority of Marlow v. School Dist. No. 4, Murray County, 29 Okla. 304, 116 Pac. 797, is authorized to maintain this action.

He asserts four propositions as follows:

"First Proposition. The record of a case which shows on its face that the petition of a creditor and the answer of a municipality was entered on the same day without any process issued and a trial thereon, and no defense being offered on the part of the city, is prima facie collusive and fraudulent.

"Second Proposition. The record showing on the same day an application to fund judgment indebtedness was filed that the bonds, already signed and certified by the municipal officials, being presented in open court for the court's approval on the same day of the filing of said application, is likewise prima facie collusive and fraudulent.

"Third Proposition. Funding bonds issued between the 1st day of July and the 15th day of November of any year are null and void upon their face; upon the ground and for the reason that there is no authority of law for the levying of any tax sufficient to create a sinking fund to retire the interest coupons of said bonds falling due at any time within the subsequent fiscal year.

"Fourth Proposition. That funding bonds issued by a municipality in excess of 5 per cent. of the assessed valuation of the taxable property of said municipality, as equalized for the previous year for state and county purposes, are void unless same shall have been issued under the provisions of section 27, article 10, Constitution, for public utility purposes."

The first and second propositions were presented together and in support thereof plaintiff relies upon the rule announced in Re Protest of Gypsy Oil Company, 141 Okla. 291, 285 Pac. 67. Plaintiff calls attention to the fact that the city entered its appearance in the district court in the suit on the warrants on the same day the petition was filed, without any process being issued or service being made upon the city; that the case proceeded to immediate trial, in which the city made no defense, and judgment was rendered on the same day, and that 35 days thereafter defendant filed its application to refund the judgment, during which time negotiations for the refunding thereof were in progress.

The indebtedness merged into judgment was evidenced by city warrants. If that indebtedness was valid when incurred, those warrants might have been refunded without

the intermediate judgment. Whether or not the judgment was valid is therefore immaterial. The refunding proceeding was in all things in conformity to the statutory procedure. The fact that the bonds were signed on the day of the hearing of the refunding proceeding does not render the bonds void, as the procedure provides for their signature at that time. Section 4270, C. O. S. 1921.

The rule announced in Re Protest of Gypsy Oil Company, supra, is not controlling here, for there the record showed that the indebtedness refunded was void as in violation of the limitations contained in section 26, art. 10, of the Constitution. There is no such showing here.

The third proposition involves the contention that the bonds were void because the first interest maturity is fixed at a date when no funds will be available for the payment thereof. The constitutional provisions contained in sections 26 and 27, art. 10, of the Constitution apply only to the incurring of indebtedness requiring the assent of the voters thereof, and have no application to the issuance of refunding bonds, through which no indebtedness is incurred. Section 28, art. 10, of the Constitution prescribes a duty to be performed by the counties, townships, school districts, cities, and towns, but that duty is not made a condition precedent to the changing of the form of the evidence of existing indebtedness, and the changing of the form thereof is in no wise dependent upon the performance of that duty by the municipality. This contention involves the procedure provided by the Legislature and not a constitutional limitation or requirement, and as such it must be taken advantage of within the 30-day limitation period and cannot be raised after the expiration of that period.

The fourth proposition involves a question that has been before this court a number of times. Since this court announced its decision in Eaton, County Treas., v. St. Louis -S. F. Ry. Co., 122 Okla. 143, 251 Pac. 1032, there has been much criticism of the rule therein applied.

To the end that that rule may be clarified we will discuss in this case, where the briefs are exhaustive, statutes and constitutional provisions dealing with the incurring of indebtedness and the refunding thereof.

The Constitution of Oklahoma became effective at statehood. On June 23, 1908, this court handed down its opinion in State ex rel. Edwards v. Millar, Mayor, 21 Okla. 448, 96 Pac. 747. The opinion was by Mr. Justice

Kane and was concurred in by all of the Justices, two of whom had been members of the constitutional convention. At that early date in the history of Oklahoma this court announced the rule of construction to be applied to the Constitution and said:

"The construction of a constitutional provision must not be so strict or technical as to defeat the evident object and purpose of its adoption."

That rule of construction is applicable. It has been applied frequently, and it should be now applied.

The "evident object and purpose" of the adoption of article 10 of the Constitution has been stated repeatedly.

At an early date this court, speaking through Mr. Justice Williams, in Campbell v. State ex rel. Brett, 23 Okla. 109, 99 Pac. 778, said:

"Our ancestors, on account of the unlawful assumption and abuse of the taxing power, were moved to resist English kings, and as a result our great charters of liberty were acceded to. By the attempted exercise of the right of taxation without the consent or approval of those who were to be taxed, the fires of the Revolution were kindled, lighting the way to the establishment in the New World of a republic that demonstrated the practicability of popular government. In the history of the framing, revising, and amending of the Constitutions of the several states, we have an illustration of the efforts of the people to protect themselves against the governmental taxing agency. In England it was against the crown; in the American states against the improvident assumption of their representatives. Taxes levied and derived from the people are in every instance an appropriation by the people to the government, to be expended in furnishing protection, security by the government within its proper functions, and facilities for the public welfare. This principle is a characteristic of the wake of Anglo-Saxon liberty, and has resulted as a restraint upon the government in preventing extravagant expenditures, as well as unjust and tyrannical action against the rights of private property. Property is never secure from the lawless grasp of the government, unless the means of existence of the government depend upon the voluntary grants of those who own the property. Hence we find the limitations, checks, and restraints in our Constitution"

—and with particular reference to section 26, art. 10, supra, said:

"The settled purpose has been to place restrictions and limitations upon the taxing power, by a restriction upon the outlay of the money after it has been collected from

the people. Under these provisions the government is dependent from year to year upon the periodical vote of supplies. In some instances this vote will come from the representatives or agents, who are newly chosen by the people, and who will be expected to reflect their views regarding the public expenditures. Whenever a debt is to cover a period of years, it is never to be valid, except when approved by a vote of the electors of the particular subdivisions of the state directly involved. Authority must be shown for every levy of taxes, not only in the state at large, but also in the political subdivisions thereof. In the state, authority is derived from the sovereign people; in the political subdivisions, from the state; and the same must be levied in the manner prescribed in delegating the authority. No one idea stands out more clearly than that barriers should be erected against the creation of municipal indebtedness. In times of popular clamor and excitement, the internal improvement craze often well-nigh wrecks the most flourishing counties and towns, even in staid and conservative commonwealths."

In O'Neil Engineering Co. v. Incorporated Town of Ryan, 32 Okla. 738, 124 Pac. 19, this court said:

"It has been said that the strict enforcement of these constitutional and statutory limitations and restrictions against municipal indebtedness, which may require the invalidation of contracts, will often result in hardship. This may be true. Restless and impatient spirits, however honest and worthy, in pursuing the mad race for business, have and doubtless will continue to seek municipal contracts with no investigations, and scarcely a thought, as to the power of the agents with whom they deal. But the hardships that may so arise are not comparable with those to be suffered by the citizens of this commonwealth, if these wise and salutary limitations, imposed by the people themselves against themselves, shall be swept aside, or evaded by ingenious reasoning, to meet the supposed necessities of a situation, or even the apparent equities of a particular case"

—and in Garvin County v. Lindsey Bridge Co., 32 Okla. 784, 124 Pac. 324, it said:

"But if the Constitution may be ignored for the benefit of honest people with meritorious claims, grafters and rascals will use the precedent to obtain that to which they are not entitled."

This court, in Gentis v. Hunt, Trustee, 121 Okla. 71, 247 Pac. 358, said:

"In the history of the framing, revising, and amending of the Constitutions of the several states, we have an impressive example of the efforts of the people to protect themselves against the improvidence and greed of governmental taxing agencies. Under the English rule, the affort to curb it was against the crown; under our present system of government, it is against the extravagance and improvidence of our representatives. Taxes levied or otherwise derived from the people are, in every instance, an appropriation by the people to the government, to be expended in furnishing protection, security by the government within its proper functions, and facilities for the advancement of the public welfare. This limitation on the funds derived from taxation has resulted in the placing of legal restraints upon the expenditure of such funds with the purpose of preventing extravagant expenditures, as well as the prevention of unjust and tyrannical action against the rights of private property."

This court in discussing section 26, art. 10, supra, in Boardman Co. v. Board of County Commissioners of Ellis County, 136 Okla. 85, 276 Pac. 474, said:

"The one purpose was to safeguard the citizens and taxpayers of the state against the inadvertence, carelessness, the profligacy and the corruption of public officials charged with the handling of public moneys. That provision is subject to no exigency, pays no heed to convenience, expediency, or emergency. It is sane, safe, unconditional, and, so far as human documents can be so regarded, should be held sacred in its observance, interpretation and enforcement. Once this clear protecting mandate is whittled away, reasoned around, or disregarded, for any cause, the chief guaranty of our orderly municipal progress, whether in state, county, city, town, township or school district, is threatened. This is no new law—it has been with us since statehood. It is only a hardship to those who will not take the time to ascertain their rights, or to those who, knowing their rights, dare to gamble on a sympathetic jury, or on a weak-kneed or indulgent court, to allow them a privilege which the people of our state have said no one shall enjoy. Contractors and others who encourage or join in with public officials charged with the care of the public funds in entering into contracts on credit, and for the payment of which they have no money in hand, are alone responsible for their losses, for this clear-cut inhibition and prohibition is addressed by the people of the state, through their Constitution, to the private citizen, to the contractor, to the taxpayer, to jurors, courts, and judges, and they are all alike charged with the observance and enforcement of this highly necessary constitutional safeguard.

"Our law books are full of cases involving attempts to break down, or to disregard, or upon one count or another to reason around, the plain terms of this or other similar provisions, and it might be said at times the courts have seemed to be some-

what unsteady in the face of some ostensible emergency, or where some particular case had some sympathetic appeal."

There can be no longer any doubt as to the "object and purpose" of article 10, supra. The "construction" thereof will be considered.

In Board of Education v. State ex rel. Best, 26 Okla. 366, 109 Pac. 563, this court, in construing section 26, art. 10, supra, said:

"In our opinion the foregoing section of the Constitution was intended to provide a specific referendum upon the question of the creation of debts by school districts to an amount exceeding in one year the income and revenue provided for such year. * * * "

That rule has never been changed and has been restated repeatedly, but it has no application to the incurring of indebtedness not exceeding, in any year, the income and revenue provided for such year.

In the case of Buxton & Skinner Stationery Co. v. Board of County Commissioners of Craig County, 53 Okla. 65, 155 Pac. 215, the plaintiff had sold merchandise to the defendant and the transaction was in all things legal. Plaintiff did not file its claim promptly and when the claim was filed the income and revenue provided for the fiscal year for the purchase of supplies had been exhausted. This court said:

"It is quite clear to us that the foregoing transactions do not constitute a violation of section 26, art. 10, of the Constitution. The county did not become indebted in any manner for any purpose for any amount exceeding the income and revenue provided for the fiscal year during which the supplies were furnished. The debt was created at the time the contract for the supplies was made, and not when the claim therefor was presented for payment"

—and announced a rule for the determination of the validity of indebtedness, as follows:

"In our judgment, the sole question herein is whether the indebtedness was valid at the time it was incurred. In determining the validity of such indebtedness, it will, of course, always be necessary to inquire whether, at the date of its assumption, there were unappropriated revenues to meet it, because, if there were not, there would be no liability resting upon the county, and the claimant would not be entitled to judgment. But if, at the time the contract was made, the indebtedness created thereby, together with all previous valid indebtedness, did not exceed the income and revenue of the county provided for such year, the claimant will be entitled to judgment for the amount of his claim."

In the City of Woodward v. Manhire Grate & Equipment Co., 98 Okla. 83, 224 Pac. 356, this court held:

"If a valid contract for the sale of merchandise or equipment is entered into with a municipal corporation in accordance with the requirements of the law, it will not be invalidated by any subsequent diversion of the funds provided by the corporation for meeting the payments required by the contract."

In Gentis v. Hunt, supra, this court said:

"Where an independent school district enters into contracts with teachers, truck drivers, and janitors, for services to be performed during that fiscal year, and the aggregate amount of such contracts, together with other obligations legally created for such purpose, is within the limits of the estimate made and approved by the excise board, and where such contracts are in all other respects regular and lawful, they create a valid obligation against such district. The fact that the school district board thereafter carelessly or ignorantly exhausts the appropriation for such purpose before the completion of said contracts, and then refuses payment, 'for want of funds,' cannot militate against the right to compensation for services performed under such contracts. In legal contemplation, the total amount of such a legal contract is always on hand and reserved until lawfully paid out in discharge of the obligation of the district under such contracts."

That rule has never been departed from.

Section 26, art. 10, of the Constitution deals with the incurring of indebtedness and, in determining whether or not an indebtedness that has been incurred is valid, the determination must be made as of the date of the incurring thereof. The validity of the indebtedness is not to be determined as of the time the warrants or bonds evidencing the indebtedness are issued or as of the date that the indebtedness is merged into judgment. If the indebtedness is valid when it is incurred, it remains valid without regard to the form of the evidence thereof or any subsequent change in conditions.

Section 26, art. 10, supra, provides, in part:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose * * * "

—and that provision is clear and unambiguous. When we add thereto, "to an amount exceeding, in any year, the income and rev-

enue provided for such year," we have said in plain and unambiguous language that indebtedness may be incurred to an amount not exceeding, in any year, the income and revenue provided for such year. The section is in no wise a limitation upon the right to become indebted to an amount not exceeding, in any year, the income and revenue provided for such year. An examination of more than one hundred and thirty decisions of this court discloses that this court has never, either directly or by inference, held that such an indebtedness may not be incurred. On the other hand, this court has repeatedly held that an indebtedness incurred to an amount not exceeding, in any year, the income and revenue provided for such year is valid.

Section 26, art. 10, supra, is not a limitation on the power of counties, cities, towns, townships, school districts, and other political corporations and subdivisions of the state to become indebted in any manner or for any purpose to an amount not exceeding, in any year, the income and revenue provided for such year, and is a limitation on those political subdivisions of the state becoming indebted to an amount exceeding, in any year, the income and revenue provided for such year.

If indebtedness is to be incurred to an amount exceeding, in any year, the income and revenue provided for such year, the assent of three-fifths of the voters of the political subdivision, voting at an election, to be held for that purpose, is required. Before an indebtedness to an amount exceeding, in any year, the income and revenue provided for such year, may be incurred an election must be held and three-fifths of the voters of the political subdivision of the state, voting at the election, must assent to the incurring thereof unless it is for public utility purposes, in which event the assent of a majority is sufficient.

This court has recognized but one exception to that rule and that was announced in the "feeding prisoners" decision. Smartt, Sheriff, v. Board of County Commissioners of Craig County, 67 Okla. 141, 169 Pac. 1101. That doctrine has been approved in one case (Hume v. Wyand, 68 Okla. 261, 173 Pac. 813), and has been followed in one case (Anderson v. Board of Commissioners, 134 Okla. 299, 273 Pac. 222), but it has been criticised by this court in many decisions and the doctrine has never been extended.

In the absence of an election and the assent of the requisite percentage of voters, the only legal indebtedness that may be incurred by a political subdivision of the state, in any year, in an amount exceeding, in that year, the income and revenue provided for that year is one incurred under the circumstances stated in Smartt, Sheriff, v. Board of County Commissioners of Craig County, supra.

When an election is held and the assent of the requisite percentage of voters is had, there is a further limitation. The assent of the voters will authorize the incurring of additional indebtedness, but only to an amount, including existing indebtedness, in the aggregate not exceeding five per centum of the valuation of the taxable property in the political subdivision, to be ascertained from the last assessment for state and county purposes previous to the incurring of the indebtedness. The assent of the voters will not authorize the incurring of indebtedness in excess of that amount, save only as authorized by section 27, art. 10, supra.

Some confusion exists as to the meaning of the phrase "including existing indebtedness" in this section.

This court has held that "existing indebtedness" does not include indebtedness incurred under the authority of section 27, art. 10, supra. State ex rel. City of Shawnee v. Short, 113 Okla. 187, 240 Pac. 700:

"In determining whether an incorporated city or town has exceeded the debt limit prescribed in section 26, art. 10, of the Constitution, the debts incurred under the provisions of section 27, Id., for 'public utilities,' owned exclusively by such city or town, should be excluded."

Other indebtedness that has been incurred with the assent of the voters is clearly included.

It does not include indebtedness incurred during that fiscal year, to an amount not exceeding the income and revenue provided for that year, for such indebtedness does not require the assent of the voters and the five per centum limitation is applicable only "in cases requiring such assent."

It does not include indebtedness incurred under the circumstances stated in Smartt, Sheriff, v. Board of County Commissioners of Craig County, supra, during that fiscal year, but it does include such indebtedness incurred during a prior fiscal year.

Does it include indebtedness incurred during a prior fiscal year, to an amount not exceeding the income and revenue provided for that year? That indebtedness is a specific charge against the income and revenue

provided for the fiscal year in which it was incurred. To include such indebtedness as a liability would authorize the inclusion of the income revenue provided for that year as an asset, and that would leave the result the same. Reynolds v. Stark, 90 Okla. 261, 217 Pac. 166; Mitsler v. Eye, 107 Okla. 289, 231 Pac. 1045; Kirk v. School District, 108 Okla. 81, 234 Pac. 596. We think that such indebtedness is not included as long as it is evidenced only by contracts or warrants. Such indebtedness should not be merged into judgment until it is clear that the income and revenue provided for those years is insufficient to retire the indebtedness. When it so appears or when the indebtedness is merged into judgment, the income and revenue provided for its payment is no longer applicable thereto, but reverts to the general fund. That indebtedness becomes payable from the sinking fund (section 28, art. 10, of the Constitution), upon its being reduced to judgment, in three years (sections 5658, 8571, 10375, C. O. S. 1921, and other statutes), and should be included in the term. School District ex rel. Hixon v. Gossett, County Attorney, 140 Okla. 243, 283 Pac. 249.

Does it include "judgment indebtedness?" We think that there is no such thing as "judgment indebtedness" and that a change in the form of indebtedness does not change the applicable rule. If the indebtedness merged into judgment should be included, it should be included notwithstanding the change in the form of evidence thereof. If the indebtedness merged into judgment should not be included, it should not be included by reason of the change in the form of evidence thereof, save only in the instance of judgments rendered on valid indebtedness incurred without the assent of the voters during prior fiscal years.

Section 28, art. 10, supra, must be given effect. Section 26, art. 10, supra, shows that indebtedness contracted without the assent of the voters is limited to an amount not exceeding the income and revenue provided for the fiscal year in which the indebtedness is contracted, and that indebtedness incurred with the assent of the voters must be accompanied by a provision for a collection of an annual tax sufficient to pay the interest thereon as it falls due and also to constitute a sinking fund for the payment of the principal thereof. There is an identical provision in section 27, art. 10, supra. If those provisions are complied with, income and revenue will be available to pay the indebtedness as it falls due. What, then, was the necessity for the requirement contained in section 28, art. 10, supra? It is evident that the makers of the Constitution foresaw that indebtedness would be incurred and that the income and revenue provided for the payment thereof would not be available, thereby necessitating the rendition of judgments against the municipality for the deficiency. Section 28, art. 10, supra, provides for the payment of judgments from the sinking fund. There is no limitation on the rates of levy for sinking fund purposes. The constitutional limitation is preserved by including such judgments in the term "existing indebtedness."

Section 26, art. 10, supra, is not a limitation on the amount of indebtedness that may exist. A political subdivision of the state might have a bonded indebtedness incurred under the authority of section 27, art. 10, supra, in an amount equal to six per centum of the valuation of the taxable property therein, a bonded indebtedness incurred with the assent of the voters as provided by section 26, art. 10, supra, to an amount equal to five per centum of the valuation of the taxable property therein and current indebtedness to the amount of the income and revenue provided for that year. It could then contract for the expenditure of the proceeds of the two bond issues, on the theory that the proceeds thereof were income and revenue provided for that purpose (Town of Covington v. Antrim Lumber Co., 123 Okla. 129, 252 Pac. 50), and thereby almost double its indebtedness. Should the treasurer abscond with the funds, there would be an existing indebtedness of more than 22 per centum of the valuation of the taxable property therein and no funds for the payment thereof, save only the amount recovered, if any, on the bond of the defaulting treasurer.

"In such case, where, at the time of entering into the contract for material, the school district had approximately the entire amount of a $5,600 bond issue, with no outstanding claims against this fund, and where the material contracted for amounted to $3,799.25, the fact that this fund was afterwards dissipated and nothing was left therein to pay the material bill when it was due cannot militate against the legality of the contract under section 26, art. 10, Williams' Constitution, since at the date the contract was entered into it was within the debt limit of the school district." School District No. 8, Marshall County, v. Home Lumber Co., 97 Okla. 72, 221 Pac. 433.

"Where the board of trustees of an incorporated town entered into a contract for material to be used in the construction of a waterworks and sewer system, and where at the time of entering into such contract,

the incorporated town had approximately the entire amount of a $75,000 bond issue with no outstanding claims against the fund, and where the material contracted for amounted to $1,291.95, the fact that this fund was afterward dissipated and nothing was left to pay the material bill when it was due cannot militate against the legality of the contract, under section 26, art. 10, Williams' Constitution, since at the date the contract was entered into, it was within the debt limit of the incorporated town." Town of Covington v. Antrim Lumber Company, supra.

Section 26, art. 10, supra, is, however, a limitation on the amount of indebtedness that may be incurred and the manner in which it may be incurred. That section is, in substance, repeated by the legislative enactments.

In Threadgill v. Peterson, 95 Okla. 187, 219 Pac. 389, this court said:

"Taxes can be levied and the moneys arising therefrom expended only as provided by express law. More than once this court has said as much, but the already heavily burdened municipalities are constantly made to know that their administrative officers not unknowingly undertook to incur indebtedness entirely without the sanction of law. In the case at bar, this was not only done, but the officers lent their aid to a species of prostitution of the court in an attempt to make their unauthorized contractual acts effective. The success of such attempts makes the courts parties to lawlessness; makes the citizens' property subject, not to the burdens of taxation the law through its enforcement machinery imposes, but to the arbitrary will of individuals who for the time being are in office. The contractual power of the board, such as here, when exercised, binds the municipality, but binds it only when exercised within the limits and bounds of the express provisions of the law. The source of all revenue for governmental purposes is the people; the process of securing the revenue is taxation. There are necessarily officers of the municipalities who must officiate in the expenditure of public funds. There are necessarily officers who must determine how much money is necessary each fiscal year in each municipality, and for what purpose or purposes such moneys are necessary in order that a proper tax levy may be made upon the assessed valuation of the properties of the municipality subject to taxation. The officers who expend the money can expend only so much as is provided for the specific purpose for which the estimate is approved and the tax levy made. When that amount is expended, or contracts made which when satisfied will exhaust such funds, the officers of the municipality, as here, have no further power to make any contract which in any wise imposes any liability in law upon the munici-

pality or political subdivision they represent. If such pretended contract is made, the officers are personally liable for any amount earned by him with whom the same is made.

"The statute hereinabove quoted, which finds its sanction in the constitutional provisions of this state (see Williams' Annotated Constitution, section 26, art. 10), is too plain for any man capable of holding such office to mistake its meaning. To pretend to excuse its violation on the ground of necessity, is merely in another form the plea in mitigation of punishment that 'necessity prompted larceny.' It furnishes neither a reason nor an excuse which, when it calls, finds the law 'at home.' It is outlaw, in the sense it is outside of any sanction of the law, except that the law in its zeal to save without loss the less guilty makes a liability personally on the officers entering into such agreement."

In Wood v. Phillips, Trustee, 95 Okla. 255, 219 Pac. 646, this court held:

"The law of this state is plain that no claim arising by contract is valid against a municipality where at the time it was contracted the estimate for such purpose was exhausted or insufficient to pay the same, but the officers are liable personally therefor. The board of county commissioners issue warrants on the county treasury for claims contracted within the approved estimate. To expend the approved estimate which may have required the maximum tax levy permitted by law, and validate all other contracted indebtedness by judgment is to strike down in practice the constitutional and statutory safeguards as the rates of tax levy. Under such conditions, it is the duty of the trial courts to see that no judgment is ever entered without the county being properly defended against the illegality thereof."

In Myers v. Independent School District, 104 Okla. 51, 230 Pac. 498, this court held:

"It was the purpose of the Legislature in providing for approved estimates for current expenses of school districts, to fix a limit beyond which school boards might not legally incur indebtedness and which would operate as notice to all persons dealing with such boards. When the total of valid contracts, wholly or partially performed, together with all other expenditures made by a school board, equal the amount of the approved estimate for current expenses in any fiscal year, the limit of legal indebtedness of the district has been reached, and any person thereafter contracting with such board is charged with knowledge of the invalidity of its acts, and is precluded from recovery against the district."

In determining whether existing indebtedness is valid, it must be analyzed. The fact that existing indebtedness is excessive is not the determining factor as to any par-

ticular indebtedness, and each item of the indebtedness must stand or fall for itself. The last indebtedness incurred may be valid and other and prior indebtedness may be invalid. If the indebtedness was valid when it was incurred, it remains valid, and there is nothing in section 26, art. 10, supra, that operates to render it invalid.

The validity of indebtedness is dependent upon one of four things.

Did it at the time it was incurred, with the other indebtedness incurred during that fiscal year, exceed the income and revenue provided for that purpose for that fiscal year? If it did not, it was valid at the time it was incurred, and its validity is not affected by the incurring of other indebtedness.

Did it have, at the time it was incurred, the assent of the requisite percentage of voters and was it within the limitation provided? If the incurring thereof was authorized and it was within the constitutional limitation at the time it was incurred, it was valid at the time it was incurred, and its validity is not affected by the incurring of other indebtedness, a change in the taxable value of the property of the political subdivision, or any other change in conditions.

Was it incurred under the circumstances stated in Smart, Sheriff, v. Board of County Commissioners of Craig County, supra? If the indebtedness does not come within one of those classes, it is void.

In State ex rel. Decker v. Stanfield, 34 Okla. 524, 126 Pac. 239, this court had before it a proceeding in mandamus to require the district judge to hold a term of court after the court fund had been exhausted, and it was there urged that by legislative enactment terms of court are required to be held, jurors paid, and other expenses incurred, and that section 26, art. 10, supra, did not apply. This court said:

"It seems to us that this provision means just what it says; that no county shall be allowed to become indebted, either by the act of its own officers, or the act of the state Legislature. The provision is against the county being allowed to become indebted, and, the provision being in the Constitution, it seems to us, is binding upon all inferior agencies, and therefore prevents the Legislature from allowing the county to become indebted, as well as the county's own officers"

—and cited ample authorities in support thereof.

It is said that the application of constitutional limitations to funding bonds will destroy their market value. The answer to that statement is that the issuance of funding bonds is not the creation of an indebtedness. Funding bonds are not sold by a municipality. If the indebtedness refunded is valid, refunding bonds issued in lieu thereof are valid, and if the indebtedness refunded is not valid, valid refunding bonds may not be issued in lieu thereof. No one is required to refund his claim. There is no provision in our statute that compels him to accept a refunding bond in lieu thereof. He may reduce his valid claim to judgment and receive payment thereof in the manner provided by the statute. If he is willing to contract with the municipality for the issuance of a refunding bond, he must do so with knowledge that the validity of the refunding bond which he accepts will be dependent upon the validity of the indebtedness refunded. If, thereafter, he sells that refunding bond to another, the purchaser thereof takes with full knowledge of the constitutional limitations on the debt creating power of the municipality and that the validity of the refunding bond is dependent upon whether or not the indebtedness refunded was, at the time of the incurring thereof, in violation of the limitations contained in the Constitution.

A refunding bond is materially different from a bond issued by a municipality under the provisions of either section 26 or 27, art. 10, of the Constitution. Bonds issued under those sections are issued by the municipality and sold on the open market for not less than par and accrued interest. The purchaser thereof is entitled to rely on the validity thereof and to receive what he pays for, which is a valid obligation of the municipality. That indebtedness is incurred by the delivery of the bonds for the proceeds thereof. A refunding bond is issued in lieu of the evidence of an indebtedness and delivered to a creditor who is charged with knowledge of whether or not his claim against the municipality is in violation of the Constitution. He cannot be heard to say that he is injured because the evidence of indebtedness that he receives is not worth more than the evidence of indebtedness that he surrenders. The refunding bonds delivered to him will be worth at least as much as the evidence of indebtedness that he surrenders. The constitutional limitations apply to the indebtedness when contracted and to the warrant issued to evidence the same, and he cannot, by changing the form of the evidence of his indebtedness, destroy those limitations.

We think it sufficient to quote the lan-

guage of this court in Re Town of Afton, 43 Okla. 720, 144 Pac. 184, as follows:

"It is suggested that to hold this debt to be void will impair the credit of the state and cause a great hardship to fall upon the parties who are holding these warrants for value, and who relied upon the integrity of the people to pay this debt of honor; and inasmuch as the legal voters of said town have shown, by their vote, that they recognized a moral, as well as a legal, obligation to pay said debt, the court should not require them to repudiate same. To this suggestion we reply that when the question of enforcing a plain provision of the organic law is presented on one side, and policies and hardships on the other, our duty is clear, and we have no choice. The plain provision of the Constitution must be obeyed and followed, not only by the courts, but by every one: and it is the solemn duty of this court, when its jurisdiction is properly invoked, to maintain and not destroy or impair the wise provisions of this sacred document. It is better that the courts preserve the organic law and protect the rights of all the people at the expense and hardship of a few, rather than to relieve the few of this expense and hardship, and in so doing destroy the Constitution and jeopardize the rights of all the people. No one could have been misled in connection with this transaction, for, as we have seen, this debt was created and the warrants issued in open violation of the Constitution, and all must be presumed to have known the law."

In the case of Fairbanks-Morse Co. v. City of Geary, 59 Okla. 22, 157 Pac. 720, this court had under consideration the effect of indebtedness contracted in violation of the constitutional limitations, and, in a lengthy opinion in which authorities from many states are cited, held:

"A debt which is in excess of the constitutional or statutory limit is void; and in no form can such debt be held valid upon any theory of quantum meruit, or equitable obligation. The absolute lack of power to contract such indebtedness bars every form of action and every legal device by which recovery is sought; nor will the courts aid the vendor to recover the property sold and delivered under such illegal contract."

That holding is supported by the authority therein cited, and we do not consider it necessary to quote further therefrom.

This court, on rehearing, in Board of County Commissioners v. Western Bank & Office Supply Co., 122 Okla. 244, 254 Pac. 741, said:

"A proper determination of the rights of the plaintiff to the recovery granted by the trial court involves section 26 of art. 10 of the Constitution of Oklahoma, as well as sections 8638 and 8639, O. O. S. 1921. Section 8638 provides, in effect, that no liability exists against a county or any municipality thereof on any contract made in excess of the estimate approved for the current fiscal year in which the contract is made. Section 8639 makes it a crime for any officer of the county, or of any municipality thereof, to contract such a debt. It is so fundamental that it needs no citation to establish it, that all persons dealing with municipalities do so at their own peril. They are charged with knowledge of the limitations placed by law upon the authority of the officers of the same. Under the law of this state, any contract made as in the instant case, where the revenue has not already been provided for, paying the same during the fiscal year in which the contract is made, is absolutely void; that is, void to the extent that the courts will not entertain any alleged cause of action to render a judgment against the municipality, and the only remedy which the statute provides or permits is an action against the officers contracting such pretended indebtedness. This remedy against the officers is by the law written into every such contract, and is expressio unius est exclusio alterius, so far as resorting to any other remedy. The purpose of this provision of the statute is both penal and remedial. It is in the nature of a penalty against the officers for the purpose of deterring them from entering into such pretended agreements. It is in the nature of a remedy in that it permits the person furnishing such goods, wares, merchandise, or labor to recover through the courts solely against the officers so prostituting their official authority.

"As said, supra, section 8639 makes the attempt to enter into such contract a crime. Persons who have goods, wares, or merchandise or labor for sale to municipalities, are charged with knowledge of how far the officers can go. If, in their zeal to vend their wares, they pay no attention to the limitation of the officials with whom they deal, they do so at the risk of their ability to recover from the officers, or of donating what they deliver to such municipality, under such contracts, and remedy in the courts to recover in any wise, save and except against the officers who entered into such an agreement, is denied. It is clearly the purpose of the said constitutional provision and the said statutes that the courts will administer no remedy to any party to a contract made in violation of the debt limitation, who thereby becomes a party assisting in a violation of a criminal statute, save and except under that provision which authorizes the recovery against the officers entering into such an agreement. This clear intent of the Legislature precludes granting the alternative prayer in the instant case. The alternative prayer was, in effect, that if plaintiff could not be given judgment for

the contract price of the furniture and fixtures delivered to McCurtain county, and to the board of county commissioners thereof, for furnishing the courthouse, the same be adjudged the property of the plaintiff and ordered returned to the plaintiff. The plaintiff was an encouraging party to this unlawful act. It is clearly the intent of the statute that no remedy can be given under such circumstances, save and except that specifically provided. The purpose of the said constitutional provision and of said statutes is to prohibit just what we find exists in the instant case. How can it prohibit it, if the person (the seller) who in his zeal to vend his wares illegally makes himself a party to such contract, and delivers the goods, wares, and merchandise, and, in event he fails to recover a money judgment, holds it over the heads of the officers, who have to use the articles furnished, that the same will be recovered through court proceedings? The law requires that if these things be furnished, they be furnished and paid for in the way the law has provided. It would force the officers to violate the 'pay as you go' policy prescribed by the law of Oklahoma for the government of the municipal subdivisions of the state. If persons who seek to supply such officers are not willing to accept in good faith the repeated decisions of this court that they are bound to take notice as to whether or not funds have been provided to pay for such articles, we are not justified in evading the law and lending the courts to assist them in evading the same; but, on the contrary, they voluntarily deliver the articles for the payment for which no provision is made by a tax levy in advance of such delivery. The courts cannot prevent their making such donations, if they do not see fit to resort to the personal obligation of the officers which the statute writes into such contracts. We have searched the reported cases in vain to find where any such supply house or other person making such contract with municipal officers has ever sued the officers personally. We fail to find in the reported cases where any county attorney has prosecuted such officers for violating section 8639. But, whether enforced or not, the provisions of the law are so clear that no person dealing with municipal officers need be misled thereby to his prejudice. There can only be one reason why such supply house as the plaintiff in the instant case furnishes its goods when there is no tax levy to pay for the same already made and approved by the excise board, and that is, in its zeal to make the sale, it is willing to take the chance on the courts stultifying themselves, and granting it a judgment against the municipality."

The constitutional limitations are not only upon the state and its municipalities, but upon the Legislature and the courts. Every individual who deals with the state or any of its municipalities does so with knowledge of the limited power of the state and its municipalities. If bonds are issued in violation of the constitutional limitations, those bonds are void and no legislative enactment may give them validity.

In Board of Education of City of Oilton v. Short, 126 Okla. 70, 258 Pac. 915, this court held:

"The foregoing limitations extend to the people as well as to their fiscal and tax-levying agent and constitute a binding agreement and compact entered into by the people, that no debt shall be allowed to be incurred in excess of the limit fixed by the Constitution."

The rule announced in the case of Eaton, County Treas., v. St. L.-S. F. Ry. Co., 122 Okla. 143, 251 Pac. 1032, has been severely criticised by those who do not approve of the rule applied and by those who do not understand the effect of the opinion. That case nowhere states that the maximum debt limit is five per cent. of the total assessed valuation of the property within the municipality. The first and third syllabus paragraphs refer to "the limit fixed by the Constitution," the second to "constitutional limitation," the fourth to "limit fixed by section 26, art. 10," the fifth to "the constitutional limitation," and the sixth to "limitations." The seventh paragraph refers to other matters. Nowhere in that opinion is it stated that a debt incurred within the income and revenue provided for that fiscal year is void. The context discloses that such an indebtedness is valid. The opinion is clear when it is read with the thought in mind that the limitation fixed by the Constitution is not five per cent. but is five per cent. plus indebtedness incurred during any year, to an amount not exceeding the income and revenue provided for that year; that the five per cent. limitation applies only in cases **requiring the assent of the voters thereof,** and that the five per cent. limitation does not apply in cases not requiring the assent of the voters thereof. The language therein used:

"The obvious purpose of this limitation is to prohibit the state and all municipal subdivisions thereof from incurring any indebtedness during any year in excess of five per centum of the assessed valuation of property for that year"

—when isolated, has the meaning ascribed to it by some of its critics, but when that language is read in connection with the entire text it can be given no such construction, and no such meaning was intended.

The meaning is well expressed therein as follows:

"If a valid debt should be incurred by a municipality, either by contract or by warrants issued, or by a judgment rendered, then if such judgment, warrant, or contracted obligation be within the constitutional limit at the time, it may be refunded without increasing the existing valid indebtedness, as it merely changes the form of such indebtedness, the new form taking the place of the old, which must be surrendered and canceled"

—and the effect of the decision is limited by the specific terms thereof:

"It is the second limitation which controls herein, and no process of theorizing can strip it of the plain meaning with which its language clothes it, to wit: 'Nor in cases requiring such assent shall any indebtedness be allowed to be incurred.' "

When understood, the rule announced in that opinion is sound, and it will not be disturbed. That rule, as therein stated, applies only to indebtedness incurred in violation of the limitations contained in the Constitution, and those limitations may not be disregarded or ignored by public officials, the people, the Legislature, or the courts. The judgment of a court providing for the refunding of indebtedness of a city can no more operate to give validity to indebtedness incurred in violation of the provisions of the Constitution of Oklahoma than can the judgment of such a court operate to defeat any other provision of the Constitution.

It is clear that if the indebtedness was invalid at the time it was incurred by reason of the limitations contained in section 26, it remains invalid and no subsequent change in conditions or the evidence thereof can operate to make it valid. Its invalidity may be asserted by any taxpayer at any time. The Legislature is without authority to provide any procedure by which the right to assert its invalidity may be defeated. A statute requiring an attack thereon to be made within a time certain is in violation of the Constitution and is void. No statute of limitation can operate to make valid that which is prohibited by the Constitution. No rule of estoppel can operate against a taxpayer or the debtor corporation, thereby validating a void thing.

How, then, is it to be determined that indebtedness is within the debt limit? The Constitution provides the answer and requires the county clerk, or other officer authorized by law to sign such certificate, and the county attorney of the county of which the political subdivision of the state is a part, to indorse on the evidence of the indebtedness a certificate stating that the same is issued pursuant to law and that the same is within the debt limit. That certificate is the determining thing. If the evidence of the indebtedness is so indorsed and delivered for a present consideration, the constitutional requirement is met and the question is determined. Any question as to the authority to incur the indebtedness or as to its being within the debt limit must be raised prior to the delivery of the instrument. Such questions cannot thereafter be raised, and the holder of the instrument is entitled to rely upon the truthfulness of that certificate.

The Legislature is authorized to pass such laws as are necessary for carrying into effect the provisions of the Constitution (section 45, art. 5), and pursuant to that authority has provided for a bond commissioner (section 4283, C. O. S. 1921) with authority to prepare uniform forms and prescribe a method of procedure under the laws of the state in all cases where it is desired to issue public securities or bonds. Section 4284, C. O. S. 1921. It has required him to examine into and pass upon any security so issued, and such security, when declared by his certificate to be issued in accordance with the forms so provided, is made incontestable in any court in the state unless suit thereon shall be brought in a court having jurisdiction of the same within 30 days from the date of approval thereof by him. Section 4284, supra. It has said that no bond thereafter issued shall be valid without that certificate. Section 4285, C. O. S. 1921.

That procedure is valid and supplements the constitutional provisions. It will be noted that that legislation does not authorize the Attorney General to certify that securities are issued pursuant to law and that the same are within the debt limit. That certificate is left, as the Constitution provided, with the county clerk or other proper officer and the county attorney.

Under that procedure a check is placed on the county clerk or other officer and the county attorney. Every taxpayer is given 30 days in which to contest the correctness of the certificate of those officers, before the delivery of the evidence of indebtedness. The procedure is in accord with the constitutional provisions and is valid. It affords ample protection to the political subdivisions of the state, the taxpayers thereof, and the holders of public securities or bonds.

The certificate so provided applies only to bonds or evidences of debt authorized by

the Constitution, and does not apply to municipal warrants.

On April 27, 1908, this court handed down the opinion in Bryan v. Menefee, 21 Okla. 1, 95 Pac. 471. The issue there was whether a warrant was valid without the indorsement of the Auditor and Attorney General of the state as required by section 29, art. 10, of the Constitution. This court held:

"Where a warrant issued for the payment of money by the proper officer by virtue of a valid appropriation, where the money is already in the treasury, or where the tax levy has already been made, with provision for the collection of same, and such warrant was issued on such fund in the treasury and would be supplied by such tax, the issuance of such warrant did not create an indebtedness within the meaning of section 29, art. 10, of the Constitution"

—and in support thereof quoted with approval the Supreme Court of North Dakota in the case of Darling v. Taylor, 75 N. W. 766, to which attention is called, and said:

"All of article 10 of our Constitution pertaining to 'public indebtedness' is substantially taken from the Constitution of North and South Dakota, and the Supreme Court of each of those states has uniformly held that when a warrant was issued for the payment of money by the proper officer by virtue of an appropriation where the money was already within the treasury of the state, or where a tax levy had already been made, and provision made for the collection of same, and such warrant was issued on such fund in the treasury as would be supplied by such tax, the issuance of such warrant did not create an indebtedness within the terms of the Constitution limiting indebtedness."

That reasoning was applied to section 29, art. 10, supra, which was the only section in issue in that case, but it is equally applicable to section 26, art. 10, supra, in so far as that section authorizes the incurring of indebtedness in any year, not exceeding the income and revenue provided for that year.

Nor does it apply to refunding bonds. There is nothing in the Constitution in any way referring to the issuance of refunding bonds. Refunding bonds are a creature of the Legislature.

"Bonded indebtedness is incurred within the meaning of section 26, article 10, of the Constitution, when the bonds of the school district are voted, issued, approved and delivered, and not when the election is held at which they are submitted." Mitsler v. Eye, 107 Okla. 289, 231 Pac. 1045.

See, also, Coppedge v. Depew Township, Creek County, 109 Okla. 117, 234 Pac. 769, and Mayberry v. Gaddis, 88 Okla. 286, 213 Pac. 316.

The Constitution nowhere deals with the issuance of bonds in lieu of existing indebtedness, and its provisions refer only to the incurring of indebtedness.

This court has held that the refunding bond procedure provided by the Legislature is not in conflict with the provisions of the Constitution. This is for the reason that that procedure applies only to valid indebtedness and has no reference to invalid indebtedness.

In State ex rel. Board v. West, 29 Okla. 503, 118 Pac. 146, it was held that section 26, art. 10, supra, has no bearing on the proceedings for the refunding of indebtedness "* * * once legally created" except in so far as it lays down the rule that the court must follow in determining whether the original indebtedness was legally created. The court said:

"Funding bonds are issued concurrently with the cancellation of warrants of the municipality, and a municipality does not by their issue become further indebted, provided the warrants themselves represent a valid indebtedness. No new debt is incurred by a mere change in the form of the existing debt."

That language clearly indicates that the indebtedness funded must be a valid indebtedness. If, by reason of the constitutional limitations, the indebtedness is invalid, the refunding thereof does not make it valid. Paraphrasing the language used, no debt is incurred by reason of a change in the form of an invalid claim. If we should take the position that the act of refunding an invalid warrant operates to create a valid indebtedness, then we can no longer say that a municipality does not, by the issuance of refunding bonds, become further indebted, and we would be compelled to say that a municipality, by the issuance of funding bonds, becomes indebted to an amount that it was not theretofore indebted. If the issuance of refunding bonds does not create an indebtedness, the five per centum constitutional limitation does not apply to refunding bonds. If the issuance of refunding bonds creates an indebtedness where none existed, the five per centum constitutional limitation must be applied to all refunding bonds. The result of this would be to deprive the political subdivisions of the state of the privilege of refunding any portion of their indebtedness where the total indebtedness was in excess of the five per centum limitation. We must hold either one or the other,

else a condition would result where the people of the municipality, by their failure to protest, could destroy the effect of the constitutional limitations.

For instance, the people of a city might desire to build a viaduct that would cost much more than the voters of that city could authorize. That city could issue bonds to the amount of six per cent. of the taxable value of the city and could sell those bonds without the approval of the Attorney General or the certificate of the county clerk or other proper officer and the county attorney. It is needless to say that those bonds would be void and no indebtedness would be created thereby. A refunding of indebtedness, if it only changed the evidence of the debt, would give the void thing no validity. If the refunding proceedings gave validity to a thing that was theretofore void, then the limitations of the Constitution would be ineffective.

Public officials might contract debts in excess of the income and revenue provided for the fiscal year without the consent of the requisite percentage of the voters and they might issue warrants in settlement of the same. Those warrants would be void. A refunding thereof, if it only changed the evidence, would give the void thing no validity. If the refunding thereof gave it validity, the limitations of the Constitution would be ineffective.

The makers of the Constitution never contemplated that the limitations contained therein should be defeated either by the people or the courts. The limitation of section 26, art. 10, supra, is upon the people and the courts. For this court to hold that the indebtedness may be incurred by reason of a judgment of a district court ordering the refunding thereof because the people in the community do not protest and because a court sees fit to permit the refunding thereof, is for this court to say that the people of the community and the courts may determine whether or not the constitutional limitations should be applied.

Since a city is prohibited by the Constitution from becoming indebted in an amount in excess of the limitation contained in section 26, art. 10, supra, those voters cannot. by failing to protest a funding bond proceeding or to appeal from a funding bond proceeding, give validity to that which is otherwise void under the constitutional limitations.

The court has never said that refunding bonds are issued pursuant to the Constitution, and it has said that where a refunding procedure violates the provisions of the Constitution, it is inoperative and void.

In the case of In re Town of Afton, 43 Okla. 720, 144 Pac. 184, the court had under consideration a special refunding procedure different from that now under consideration. In construing that provision the court said:

"If it was the purpose of this act to authorize the court to give its approval to any municipal corporation to issue bonds in payment of an indebtedness which did not exceed the revenue and income which had been provided by the proper officials for such year, although such indebtedness may have exceeded the actual revenue and income collected by said municipality, then it would doubtless be valid. On the other hand, if, construing the act as a whole, it is made clear that it was the intent of the Legislature to authorize the court to make valid a pretended obligation of the municipality, which was attempted to be created in violation of section 26, art. 10, of the Constitution, and which was, as a matter of law, invalid, then such act is in conflict with both the letter and spirit of said provision of the Constitution, supra, and must fall"

—and:

"If the statute, which we hold to be in conflict with the Constitution and void, had been held to be valid, yet the court could not have validated the indebtedness or the warrants issued in payment of same, for the reason the same is clearly in violation of section 26, art. 10, Const., supra."

The question then arises as to the validity of the 30-day statute of limitations provided by section 4284, supra, as applied to refunding bonds issued for the purpose of refunding indebtedness contracted in violation of the limitations contained in the Constitution and void by reason of those limitations.

The defendant contends that this action, having been instituted after the expiration of 30 days from the approval of the bonds in question by the Attorney General of the state of Oklahoma, is barred by reason of that provision. That section prescribed a special limitation (Board of Education v. Short, 89 Okla. 2, 213 Pac. 857), and so far as the same is not in conflict with the provisions of the Constitution that statute is valid and binding. A challenge to the validity of the bonds is required to be made promptly, if it is made at all, to the end that all discretionary matters may be determined prior to the issuance and delivery thereof, and after the expiration of the statutory period there can be no question raised as to the validity of the procedure followed or of the indebtedness sought to be refunded, save only the limitations prescribed by the

Constitution. In so far as section 4284, supra, conflicts with the Constitution it is of no effect. The limitations contained in the Constitution cannot be destroyed or made ineffective by any legislative enactment.

The Legislature is without authority to provide a limitation that would operate to defeat the right to assert the constitutional limitations on the incurring of indebtedness. Eaton v. St. L.-S. F. Ry. Co., supra. That section is valid in so far as it operates to defeat the right to maintain an action involving any legislative requirement, but all questions as to the violation of the constitutional limitations on the incurring of indebtedness may be raised notwithstanding the expiration of the 30-day period prescribed.

This court, in September, 1911, handed down an opinion in State ex rel. Board of Education v. West, 29 Okla. 503, 118 Pac. 146, dealing with funding bonds and the effect of the refunding of indebtedness. That was a proceeding in mandamus to require the Attorney General to approve a proposed issue of funding bonds. It was admitted that the refunding proceedings were regular and the Attorney General based his refusal to approve the bond issue in part on the ground that it was his duty to examine the proceedings and reject the issue if, in his opinion, any part of the indebtedness sought to be refunded was illegal, notwithstanding the district court had judicially found to the contrary. This court held against that contention and that the Attorney General had no power to revise or review a refunding judgment, other than to "* * * ascertain whether statutory authority existed for the issuance of the bonds, whether the essential facts existed upon which the exercise of such statutory authority may be conditioned, and whether the forms and methods of procedure prescribed by the Constitution and statutes have been complied with." The court said:

"If an appeal had been taken from the decree or judgment of the district court and had been affirmed by the Supreme Court, the Attorney General, under his construction, could still review the correctness of the decision of the district and Supreme Courts, or refuse to follow it, or treat it as not conclusive of the validity of the refunding issue. The case as it stands is in no different situation. A judgment not appealed from has exactly the same effect as a judgment which has been affirmed on appeal. It is the opinion of the court that the decision of the district court validating the warrants and authorizing the funding * * * and signing of the funding bonds, remaining unappealed

from, concludes the question as to the validity of the refunding issue, and forecloses the Attorney General from reversing the judgment thus solemnly reached."

It will be noted that there is nothing therein that was intended to, or does, make valid a claim that was invalid under the Constitution of Oklahoma, and while this court said that a judgment unappealed from has exactly the same effect as a judgment which has been affirmed on appeal, it does not say that a judgment rendered in violation of the limitations on the debt incurring power of a municipality makes an invalid claim a valid indebtedness.

In Re Application of State to Issue Bonds to Refund Indebtedness, 33 Okla. 797, 127 Pac. 1065, the validity of certain warrants was in issue. There was no contention that the debts incurred and evidenced by the warrants sought to be funded exceeded, at the time the debts were incurred, the revenue provided in good faith for that year, and the court assumed that if the revenue provided had been collected and properly applied, the warrants would have been paid. This court held that, since the debts represented by the warrants were legal at the time they were made, "* * * no subsequent act or misappropriation, or failure of the funds in good faith provided for, can operate to render them invalid." This court said:

"These constitutional limitations under discussion, being obviously directed against the contracting of debts, can have no application to the manner in which valid debts may be evidenced"

—and cited a large number of cases in support of the statement that the issuing of funding bonds in lieu of valid pre-existing indebtedness neither creates a debt nor increases the indebtedness of the municipality issuing them. None of those cases holds that the issuing of funding bonds in lieu of indebtedness created in violation of the constitutional limitations creates a debt or makes valid that which was theretofore invalid, and the constitutional limitations are specifically preserved by the language used, as follows:

"If the state, in fact, then owes the sums represented by these warrants, it is within the power of the Legislature to provide for their payment in any manner it may choose, so long as it does not violate a constitutional provision."

An examination of the refunding bond procedure discloses that the Legislature has not seen fit to provide for a certificate on refunding bonds as to their being issued pursuant to law or within the debt limit. There is no legislative provision for such

a certificate, and the constitutional provision does not apply. Had the Legislature so provided, we would be of the opinion that it was an unauthorized and void act and an attempt on the part of the Legislature to provide machinery with which to defeat constitutional limitations.

Refunding bonds must stand or fall on the validity or invalidity of the indebtedness refunded, unaided by any certificate that the same are issued pursuant to law and that the same are within the debt limit, or by the 30-day statute of limitations, except in so far as the attack thereon is based on failure to comply with legislative requirements, such an attack being required to be made within that period.

It is said that the court, under the funding bond procedure, renders a judgment which should be given all the force and effect given to other court judgments. Section 4270, C. O. S. 1921, requires the court to determine the "* * * existence, character and amount of the outstanding legal indebtedness, * * *" and it would appear therefrom that such a finding and determination by the court would, in the absence of an appeal, be conclusive. Such a statement was made in State ex rel. Board of Education v. West, supra. That statement was entirely too broad and did not consider the effect of the constitutional limitations herein involved.

In order to make this clear it must be kept in mind that the only party before the court in a refunding proceeding is the municipality and the only other party authorized to appear before that court is the taxpayer. The claimant or creditor is not before the court, and there is no authority to bring the claimant or creditor before the court. If the court is authorized to say that the claim is valid and by so saying to give that order the effect and finality of a judgment, it must of necessity have the authority to say that the claim is invalid, and that determination would have the same effect and finality as a judgment. Can it be said that a creditor would lose his right by the determination of a court without the creditor being before that court? Certainly not. The procedure outlined is in nowise adversary to the claim of the creditor.

In some refunding cases the indebtedness sought to be refunded is evidenced by a judgment. Was it intended by the Legislature that a refunding proceeding be an additional method for vacating a judgment? We think not. A taxpayer may not, in a refunding proceeding, attack the validity of a judgment that is valid on its face. The rights of the judgment creditor would not be affected by a proceeding to which he was not a party, and he would gain no additional rights thereby. If it was a valid judgment, it would not be defeated by a determination in a refunding proceeding. If it was an invalid judgment, it would not become valid by a determination in a refunding proceeding.

Since a taxpayer may not defeat a claim sought to be refunded and bar the claimant by a refunding proceeding, it cannot be said that the rights of a taxpayer to assert the invalidity of such claim is barred by a failure to assert the same in a refunding procedure.

A refunding proceeding is no more than a proceeding to change the form of an evidence of existing valid indebtedness, to extend the due date thereof and to fix the interest rate after the extension thereof. The court in determining the same does not give validity to indebtedness that was theretofore invalid, and by refusing to approve a refunding does not render invalid indebtedness that was theretofore valid.

There is another reason why the determination of that court cannot make valid a claim that is invalid under the limitations of the Constitution, and that is that the municipality may not become indebted in violation of a constitutional limitation even though the officers of the municipality and every citizen and taxpayer therein should give his consent. The determination by the court in a refunding proceeding can have no effect beyond a determination that the legislative requirements have been complied with.

What is the effect of a judgment of a court merging into judgment a claim that is invalid under the constitutional limitations?

Certainly there must be some forum in which the validity of a claim against a municipality may be asserted. Under the Constitution the courts of this state constitute that forum, and, under certain circumstances, the federal courts constitute such a forum. The judgment of a court of competent jurisdiction, having jurisdiction of the subject-matter and the parties and jurisdiction to make the particular order made, is in the absence of an appeal, final and conclusive, subject to be vacated, set aside, or held for naught in the manner provided in the Code of Civil Procedure. Where such a court renders a judgment in a proper proceeding after the necessary defendants are before the court, that judgment, unappealed from, is final until vacated, set aside, or

held for naught in a lawful manner, and is binding and conclusive and cannot be collaterally attacked. That rule is fundamental, and no citation of authority therefor is necessary.

In determining the validity of a judgment against one of the political subdivisions of the state the judgment roll must be examined, and, unless the judgment roll shows the same to be valid, the judgment is void on its face and may be attacked in any proceeding, either directly or collaterally.

What must the judgment roll show?

It must show a petition which states a cause of action, filed in a court of competent jurisdiction. The relief asked must be within the jurisdiction of the court.

It must show jurisdiction over the person of the political subdivision. In that respect we call attention to a distinction between the political subdivision and the officers who represent it. The political subdivision, being the defendant, must be brought before the court in some manner authorized by law. The statute prescribes methods for procuring service upon the political subdivision of the state. We knew of no statute that authorizes the officers of a political subdivision to waive the issuance and service of summons for a political subdivision. Where a liability is asserted against a political subdivision of the state which, if disallowed, will be a liability against the officers of that political subdivision, the waiver of the issuance and service of a summons by the officers of that political subdivision opens the way to fraud. In the absence of a statute authorizing the officers of a political subdivision of the state to waive the issuance and service of summons for that political subdivision, this court must hold that a court does not obtain jurisdiction over a political subdivision of the state by the waiver of the issuance and service of a summons by its officers.

In Wood v. Phillips, Trustee, 95 Okla. 255, 219 Pac. 646, this court held:

"The failure of the board of county commissioners to file proper pleadings and make a defense in good faith against claims in excess of the estimate made and approved for such purposes, and in excess of the tax levy for such purposes for such fiscal year, constitutes a fraud upon the county and its taxpayers they represent."

A political subdivision of the state, when sued without the issuance and service of a summons, may file its answer in the case in defense of its rights, thereby entering its appearance in the cause. When an "answer" is filed by it, that pleading must be examined to determine whether it is in fact an answer or an attempt on the part of the officers to waive service of summons. If it is the latter, the fact that it is denominated "answer" is of no avail to give the court jurisdiction. A political subdivision of the state may not waive service of summons in court by an instrument denominated "answer," but the instrument must show for itself that it is an answer.

When a court is called upon to render a judgment against a political subdivision of the state, the first question presented is why, if the claim is valid, was it not paid from the income and revenue provided for that purpose. In order to state a cause of action, the petition must allege that the indebtedness incurred was not in excess of the income and revenue provided for that purpose, or that it was authorized by a vote of the people. A general denial on the part of the municipality puts in issue those allegations and presents an issue to be tried, but an instrument denominated "answer" which asserts that the indebtedness sued on is valid and is unpaid for the reason that there are no funds with which to pay it does not put in issue those allegations. This court in Wood v. Phillips, Trustee, supra, said:

"Each of the commissioners, when taking the witness stand for the plaintiff, concluded his testimony by stating, in substance, that the claims had not been paid by the board of county commissioners because the board had no funds or no available cash with which to pay them. The board of county commissioners, under the fiscal system of this state, never has any cash, and the board is not called upon and is not permitted as a matter of law at any time to have available cash to pay any claim. All legal claims are utimately paid by the county treasurer of the county, who is the custodian of the county's funds of each and every character"

—and gave the reason for the distinction when it said:

"If a judgment based upon such a proceeding could have any sanction in the law of the state in financing a county or any other municipality of the state, it would indeed operate to nullify the tax limitation provisions of the Constitution and the statutes. Throughout the Constitution and the statutes of this state are limitations on the rate of taxation that can be levied for specific purposes. If the amount to be raised by such constitutional or statutory rate can be exhausted, and then claims or indebtedness, contractual in their

nature, can be made by administrative officers of the municipality * * * which can be reduced to a judgment and then funded or collected against the county, the limitation provisions on the rate of taxation can have no controlling or effective force, and the amount of taxation during any current fiscal year, as in the case at bar, could be increased at the discretion of the officers in charge of the county affairs. If indeed such contracts can be made, after the funds provided for such purposes are exhausted, which would bind the county in the sum of 60 odd thousand dollars, the county commissioners could have with equal legal force entered into contracts binding upon the county in an equal number of millions of dollars, which would operate to confiscate all of the private property in the county they represent.

"When such a condition as is here presented by the record is brought before the trial courts of this state, it is their duty to see that the interests of the county are properly protected, either by a defense in good faith interposed by the officers of the law, or that taxpayers who intervene develop all the facts, and that no judgment be entered against a county as here, tainted with such connivance and legal fraud as is here apparent from the reading of the record in this case."

If the instrument denominated "answer" does not, upon its face, put in issue the allegations of the petition, it is nothing more than an attempt to waive service of summons in the court and is void. The purpose of an answer of a municipality is to deny. There is no legal reason for a municipality filing an answer admitting indebtedness or admitting facts from which indebtedness may appear. The constitutional limitations which prohibit a municipality from becoming indebted, prohibit a municipality from filing in a court a pleading that admits an indebtedness. It is said that a municipality that owes an indebtedness and that will be liable for the cost will be benefited by entering an appearance and thus reducing the cost. But whether or not that will be a benefit to the municipality, it is not authorized by any statute, and such practice cannot be followed or approved.

If a political subdivision of the state is sued in a court of competent jurisdiction havng jurisdiction of the subject-matter of the action and that political subdivision is brought before the court by proper service of summons, or if it files its answer which, by its terms, contests the claim and in nowise confesses the claim or the facts upon which the claim is based, and the court renders a judgment thereon within its jurisdiction, that judgment, unappealed from, is binding and conclusive upon the political subdivision of the state and upon the taxpayers thereof, subject only to the right to have the same vacated, set aside, or held for naught in a proper proceeding. On the other hand, if such a judgment is rendered without the service of a summons or without the filing of such answer, that judgment is void for want of jurisdiction over the person of the political subdivision of the state and its invalidity may be asserted at any time and in any sort of a proceeding.

"Whoever deals with a municipality does so with notice of the limitations on it or its agents' powers. All are presumed to know the law, and those who contract with it, or furnish it supplies, do so with reference to the law; and if they go beyond the limitations imposed they do so at their peril." Flood v. Town of Shidler, 127 Okla. 148, 260 Pac. 52.

See, also, Town of Redfork v. Gantt-Baker Co., Inc., 130 Okla. 175, 266 Pac. 444, and Wilson v. Oklahoma City, 120 Okla. 266, 251 Pac. 484,

That rule applies equally as well when the creditor of a municipality exchanges the evidence of his claim for a refunding bond, and it applies to the person who buys that refunding bond from him. In Mayer v. J. T. Jones & Sons, 113 Okla. 119, 239 Pac. 904, this court clearly announced a rule of law which, if followed by municipal officers, would avoid much of the confusion that exists. It held:

"The purpose of the law, in providing for officers and vesting them with any power to raise revenue and to incur debts against same, is to secure the necessary expenses of government; hence, under our plan of government and policy of law, it is not intended that the revenues for the necessary expenses of government shall be dissipated and squandered for nonessential conveniences before the expenses imposed by law are met or provided for"

—and in support of the rule announced said:

"This limitation is not only free of ambiguity, but the language is clear, positive, and mandatory. There could have been but one purpose in view by the framers of the Constitution in choosing the above language, and by the people in the adoption of such provision as a part of their organic law, viz., to prohibit the state and all its municipal subdivisions from incurring any indebtedness for any purpose, in any year, beyond the revenues provided for that year, without the assent of three-fifths of the voters of the municipality seeking to incur such indebtedness, and such purpose could not have been expressed in clearer and more emphatic words.

"It constitutes a positive, mandatory limitation upon the power of fiscal agents of the state and its municipal subdivisions to incur any debt, in any year, in excess of the revenue provided for such year, unless the incurring of such debt has the assent of three-fifths of the voters of the municipality incurring same, at an election held for the purpose of ascertaining whether such assent be given or withheld. The power of the officers to contract debts ceases when this limit is reached, and it is reserved to the voters to say whether such limit shall be exceeded.

"The framers of the Constitution, foreseeing the necessity for such a limitation, wisely proposed and submitted it to the electorate, and the people, with like wisdom, adopted it as a part of their organic law, and thereby they not only reserved to themselves a voice in the fiscal affairs of government beyond the prescribed limit, but bound themselves as well as their officials to be governed by such limitations; realizing that they could not have time to spare from their own private affairs to look after and exercise a voice in every detail of government, they vested power in certain officers to provide for revenue within a prescribed limit and to incur debts up to a prescribed limit, but they emphatically say: 'When this limit is reached, no further debt shall be allowed to be incurred, in any manner, or for any purpose, without the people's assent.' This limitation is not only plain and positive, but wise and wholesome. It not only secures the people against reckless extravagance, but gives stability and soundness to municipal credit.

"It is equivalent to the people's saying to their officers and the commercial world: 'We hereby authorize our chosen agents to levy revenues up to the prescribed limit and to incur indebtedness up to the prescribed limit and pledge the credit of the state to the payment of all debts up to such limit, but beyond such limit, no debts shall be allowed to be incurred in any manner, or for any purpose, without our assent.' In other words, if any debts are contemplated beyond this limit, the people have reserved the right to say whether or not it shall be incurred; it might be for something which the people might vote to do without, or it might be for something which they might consider necessary, and give their assent thereto, but in either event they reserve the right to say by their vote whether or not any debt for any purpose shall be incurred in excess of the limit prescribed."

If the municipal officers will charge the necessary and fixed expenditures against the amount of the appropriation as soon as the appropriations are made, they will know the amount that may thereafter be expended and there will be no excuse for contracting indebtedness to greater amount. A municipal officer, when informed of the amount of the appropriation, may think that he is authorized to contract indebtedness to the amount of that appropriation, and in many instances he does not know that there are certain necessary and fixed charges against that appropriation which materially reduce the amount that he is authorized to expend. If municipal officers will follow such a procedure and charge against the appropriation, indebtedness contracted, at the time it is contracted, and not wait for the completion of the work or the filing of the claim to charge the same against the appropriation, they will know at all times how much indebtedness may be contracted.

On the other hand, if the constitutional and statutory requirements are not complied with, if invalid claims are paid from the income and revenue provided for the year, in violation of the law, leaving no income and revenue for the payment of valid indebtedness, and if the trial courts do not afford the taxpayers the relief guaranteed them by the Constitution against such unlawful indebtedness, it will be necessary for this court to apply a strict rule in order that the limitations contained in the Constitution may be enforced.

The record does not show the nature of the indebtedness involved in this action, and this court is unable to say from this record whether or not it was incurred in violation of the constitutional limitations. That burden was on the plaintiff, and not being sustained, the judgment appealed from is affirmed.

HUNT, RILEY, HEFNER, and CULLISON, JJ., concur. SWINDALL, J., concurs in all except syllabus parag. 20. LESTER, V. C. J., and CLARK, J., concur in conclusion. MASON, C. J., absent.