Note.—See 36 Cyc. p. 944; anno 40 L. R. A. (N. S.) 28; 25 R. C. L. p. 805 et seq.; 4 R. C. L. Supp. p. 1602; 5 R. C. L. Supp. p. 1346.

---

### GENTIS et al. v. HUNT, Trustee, et al.

No. 14850—Opinion Filed June 23, 1925.

Rehearing Denied June 22, 1926.

(Syllabus.)

**1. Schools and School Districts — Current Expenses—Constitutional Limitation.**

The intention and plain purpose of section 26, art. 10, of the Constitution of Oklahoma is to require school districts and other subdivisions of the state government to carry on their operations upon a "cash or pay as you go plan." The revenues of each year must take care of the expenditures of such year, and any liability, sought to be incurred in excess of such current revenue in hand or legally levied, is void, unless it be authorized by a vote of the people and within the limitations provided by said section.

**2. Same—Illegal Contracts Seeking to Create Liability Against Funds of Subsequent Fiscal Year.**

Where the defendant school board, during one fiscal year, enters into contracts which undertake to create a liability against funds of the subsequent fiscal year for services then to be performed, held, in a suit against the school district to recover thereunder for services performed during such subsequent year and after the estimate made and approved for such purpose was diverted and exhausted during that fiscal year, that said contracts were entered into in contravention of the intention and plain purpose of section 26, art. 10, of the Constitution, and therefore do not create a legal liability against the district.

**3. Same—Persons Contracting Charged with Notice of Legal Limitations on Municipality.**

He who deals with a municipality does so with notice of the limitation on its or its agents' powers. All are presumed to know the law, and those contracting with it do so with reference to the law; and if they go beyond the limitations imposed, they do so at their peril.

**4. Same—Valid Contracts not Affected by Subsequent Diversion of Funds.**

Where an independent school district enters into contracts with teachers. truck drivers, and janitors, for services to be performed during that fiscal year, and the aggregate amount of such contracts, together with other obligations legally created for such purpose, is within the limits of the estimate made and approved by the excise board, and where such contracts are in all other respects regular and lawful, they create a valid obligation against such district. The fact that the school district board thereafter carelessly or ignorantly exhausts the appropriation for such purpose before the completion of said contracts, and then refuses payment, "for want of funds," cannot militate against the right to compensation for services performed under such contracts. In legal contemplation, the total amount of such a legal contract is always on hand and reserved until lawfully paid out in discharge of the obligation of the district under such contracts.

Error from District Court, Tulsa County; Albert C. Hunt, Judge.

Action by John W. Hunt, trustee, against the Board of Education of the Town of Jenks. in which I. J. Gentis et al., as taxpayers intervene and defend. From a judgment in favor of plaintiff, interveners appeal. Affirmed in part, and reversed in part.

Louis W. Pratt and J. M. Springer, for plaintiffs in error.

Eugene O. Monnett and Wash Hudson, for defendants in error.

MASON, J. This action was commenced in the district court of Tulsa county, Okla., by plaintiff in error, John W. Hunt, trustee, against the board of education of the town of Jenks, Okla., which is independent school district No. 27 of Tulsa county, to recover on 35 causes of action for services rendered under contracts with said district by 29 teachers, 3 janitors, and 3 truck drivers during the months of April, May, and June, of the year 1922.

The board of education answered by a general denial.

The plaintiffs in error herein were permitted to intervene, and filed an answer al-

leging that they, in common with other taxpayers of the district, were the real parties in interest, and that their property was affected by the attempt of the plaintiff to obtain a judgment upon said claims, which they alleged to be illegal and void and in violation of the Constitution and laws of Oklahoma. They denied any liability on the part of the defendant, board of education, and specifically alleged that the total income and revenue provided for the fiscal year beginning July 1, 1921, and ending June 30, 1922, had been exhausted and paid out before the first day of April, 1922, and that the board of education was wholly without funds and was not allowed to become indebted in any manner or for any purpose to the plaintiff or any other persons during the months of April, May, and June, 1922, when the services were alleged to have been rendered for which judgment was demanded by the plaintiff.

Upon trial of the case to the court, judgment was rendered for the plaintiff for the full amount sued for, from which the interveners have duly perfected this appeal.

The facts in the case are substantially as follows:

That the claims sued on herein were based upon contracts entered into on various dates from March 28, 1921, to January 9, 1922; that 22 of said contracts were entered into prior to July 1, 1921, or the first of the fiscal year 1921-22; that the proper designation of said school district is independent school district No. 21, of Tulsa county; that the aggregate amount of said contracts was approximately $40,000, and that the appropriation and estimate made and approved by the county excise board for such purposes was approximately $29,000; that the entire appropriation made for such purpose was exhausted on April 1, 1922; that the claimants continued to render services under said contracts during the months of April, May, and June, 1922, although they had notice in advance thereof that there were no funds available for such services; that, after such services were rendered, during said three months time, and after their claims were disallowed because of the lack of funds to pay the same, all claims were assigned to the defendant in error, John W. Hunt, as trustee, for the purpose of filing this suit for the collection of same.

Some contention is made by defendants in error that the record does not affirmatively show the amount of the estimate approved by the excise board. Such contention is based upon the failure of said board to place the amount of the various items in

the column headed "Appropriation by Excise Board". But, inasmuch as it is apparent from the photographic copy of the estimate in the record that said board inadvertently placed said amounts in the adjoining column, we think this contention is without merit.

The record further shows that these contracts, from one to 21, inclusive, were entered into prior to the first of the fiscal year beginning July 1, 1921; that no funds at that time were available to pay the teachers' salaries under the said contracts; that no estimate had been approved by the excise board, and that no levy had been made for that fiscal year; that, at the beginning of the fiscal year of 1921 and 1922, the excise board approved an estimate and a levy was made providing a total of $34,239-64 for salaries for teachers, janitors, and truck drivers for the said district during the said fiscal year; that thereafter the board of education entered into the contracts involved in causes of action 2, 7, 12, 17, 20, 28, 29, 30, 31, 32, 33, 34, and 35, the total of which were within said estimate and income so provided for the said fiscal year.

For reversal, the plaintiffs in error contend that, inasmuch as the aggregate amount of said contract was far in excess of the appropriation and estimate made and approved for such purpose, said contracts were illegal and unenforceable, and that services rendered thereunder during the months of April, May, and June, 1922, and after the appropriation or approved estimate was exhausted, did not create a legal liability against said school district, and that therefore the trial court erred in rendering judgment for the plaintiff.

The defendants in error contend that, if a contract, when made, with a municipality of the state of Oklahoma, is within the income and estimate of said municipality, made and approved for such purpose, a subsequent diversion or lack of funds on the part of said municipality will not invalidate or affect such contract. If the estimate has been made, and the income fixed at the time of making the contract, this is a correct statement of the law. This rule has been announced by this court in the following cases: Buxton & Skinner Stationery Co. v. Board of Commissioners of Craig County, 53 Okla. 65, 155 Pac. 215; State Bank of Miami v. City of Miami, 43 Okla. 809, 144 Pac. 597; Fairbanks Co. v. City of Sulphur, 62 Okla. 10, 161 Pac. 811.

On the basis of this proposition, the defendant in error then insists that contracts 1 to 21, inclusive, which were made prior to the estimate and levy for the fiscal year

beginning July 1, 1921, in employing a part of the teachers for the fiscal year beginning July 1, 1921, prior to the making of an estimate and levy, are valid, since the amount of the same, together with all valid pre-existing indebtedness for the same purpose, did not exceed the estimate made and approved by the county excise board and income for such purpose. The record shows that the total consideration to be paid to the teachers under the said contracts was $29,150, and that the total estimate subsequently made and approved for teachers' salaries for the said year was $29,383.58.

It is contended that the action of the board of education in entering into the contracts after July 1, 1921, was an illegal diversion of the funds available to pay the salaries due under the contracts which were entered into by the said board prior to July 1, 1921, and that, under the principle announced in the last above cited cases, such subsequent diversion could not affect the validity of such prior contracts. It is evident that counsel for the defendant in error overlooked consideration of the admitted fact that, at the time of the making of the contracts entered into prior to the first of the fiscal year of 1921 and 1922, no funds were available or estimate approved providing funds to pay the contracted salaries. It would seem that, through such contention, counsel for the defendant in error virtually concede that the other contracts sued upon and which were executed subsequently to July 1, 1921, are invalid and unenforceable, and that the trial court erred in rendering judgment on the said subsequent contracts.

It appears, therefore, that the real question for our determination is: "Can the officers of a municipality or school district of Oklahoma, through contracts entered into during one fiscal year, create a liability against an appropriation or estimate to be subsequently made and approved for the following fiscal year so as to form the basis of a judgment against such municipality or school district for services rendered thereunder, after such estimate for that class of services has been diverted or exhausted under the contracts executed during the fiscal year for which the funds were available?"

An examination of the case of Buxton & Skinner Stationery Co. v. Board of Commissioners of Craig County, supra, and the other cases cited by defendant in error, discloses that the rule therein announced and relied on by defendant in error herein was based upon the fact that the contracts sued on therein were, when made, within

the estimate which had previously been made and approved for that purpose, and that they were otherwise legal and enforceable. In the case at bar, the facts were the reverse.

If the contracts herein were illegal or in contravention of the state Constitution at the time they were entered into, the rule is well settled that a court will not use its power or lend its offices to aid them.

"The law will not lend its support to a claim founded upon its own violation." Coppell v. Hall, 7 Wall. 542, 19 L. Ed. 244; Berka v. Woodward, 125 Cal. 126. 57 Pac. 777. 45 L. R. A. 420, 73 Am. St. Rep. 31.

"No right of action can spring out of an illegal contract." Pratt v. Short, 79 N. Y. 437, 35 Am. Rep. 531.

"No action can be maintained upon a contract made illegal by statute." Nix v. Bell, 66 Ga. 664.

"No principle of law ' * * is better settled than that no action will lie upon a contract made in violation of a statute." Wheeler v. Russell, 17 Mass. 258.

"An action founded upon a contract prohibited by statute is not maintainable." Holt v. Green, 73 Pa. 198, 13 Am. Rep. 737.

"No case * * * can be found where an action has been sustained which goes in affirmance of an illegal contract; and where the object of it is to enforce the performance of an engagement prohibited by law." Hunt v. Knickerbacker, 5 Johns. (N. Y.) 273.

"Every act done against a prohibitory statute is not only illegal, but absolutely void." Hallett v. Novion, 14 Johns. (N. Y.) 273.

"No man can come into a court of justice to seek the assistance of the law, who founds his claim upon a contravention of the law." Gregg v. Wyman, 4 Cush. (Mass.) 322. Nor must it be forgotten that: 'Whoever deals with a municipality does so with notice of the limitation on its or its agents' powers. All are presumed to know the law, and those who contract with it or furnish it supplies do so with reference to the law; and, if they go beyond the limitations imposed, they do so at their peril.' " O'Neil Eng. Co. v. Town of Ryan, 32 Okla. 728, 124 Pac. 19.

One of the moving causes that prompted our forefathers to resist and overthrow the English rule, which resulted in the establishment of our great charters of liberty, freedom, and personal rights. was the unlawful assumption and abuse of the taxing power.

In the history of the framing, revising, and amending of the Constitutions of the several states, we have an impressive ex-

ample of the efforts of the people to protect themselves against the improvidence and greed of governmental taxing agencies. Under the English rule, the effort to curb it was against the Crown; under our present system of government it is against the extravagance and improvidence of our representatives. Taxes levied or otherwise derived from the people are, in every instance, an appropriation by the people to the government, to be expended in furnishing protection, security by the government within its proper functions, and facilities for the advancement of the public welfare. This limitation on the funds derived from taxation has resulted in the placing of legal restraints upon the expenditure of such funds with the purpose of preventing extravagant expenditures, as well as the prevention of unjust and tyrannical action against the rights of private property. Property is never secure from the lawless grasp of the government, unless the means of existence of the government depend upon the voluntary grants of those who own the property. Hence, we find the limitations, checks and restraints in the Constitution of Oklahoma, section 26, art. 10, of which provides:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from 'he last assessment for state and county purposes previous to the incurring of such indebtedness. * * *"

As a further guarantee of these rights, the law-makers in their wisdom have seen fit to enact section 8638, Comp. Okla. Stat. 1921, which re-embodies the provisions of the Constitution above set forth.

The settled purpose has been to place restrictions and limitations upon the taxing power by restrictions upon the outlay of the money after it has been collected from the people. Under these provisions, the various departments and agencies of government are dependent, from year to year, upon the periodical vote of the necessary funds and appropriations. In some instances this vote will come from the representatives, or agents of the people, who reflect their views regarding public expenditures, but when a debt is to cover more than one year or a period of years, it is never valid, except when approved by a vote of the electors of the particular subdivision of the state directly involved.

In the case of O'Neil Eng. Co. v. Town of Ryan, supra, the following language is used:

"The intention and plain effect of the provision of the Constitution under consideration is to require municipalities to carry on their operations upon the cash or pay as you go plan. The revenues of each year must take care of the expenses of such year; and any liability sought to be incurred by contract, express or implied, executed or executory, in excess of such current revenue, in hand or legally levied, is void, unless it be authorized by a vote of the people, and within the limitation therein required. Campbell v. State ex rel., 23 Okla. 109, 99 Pac. 778; City of Ardmore v. State ex rel., 24 Okla. 862, 104 Pac. 913; Spilman v. City of Parkersburg, 35 W. Va. 605, 14 S. E. 279; Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132; San Francisco Gas. Co. v. Brickwedel, 62 Cal. 641; McGowan v. Ford. 107 Cal. 177, 49 Pac. 231; Sutro v. Pettit, 74 Cal. 332. 16 Pac. 7, 5 Am. St. Rep. 442; First National Bank v. Doon Dist. Tp., 86 Iowa. 330, 53 N. W. 301. 41 Am. St. Rep. 489; Lake County v. Rollins. 130 U. S. 662, 9 Sup. Ct. 651, 32 L. Ed. 1060. In the Campbell Case, supra, Mr. Justice Williams, in discussing this provision says: 'The settled purpose has been to place restrictions and limitations upon the taxing power by a restriction upon the outlay of the money after it has been collected by the people. Under this provision the government is dependent from year to year upon the periodical vote of supplies'. And further: 'No one idea stands out more clearly than that barriers should be erected against the creation of municipal indebtedness.'

"It is apparent that the contract in suit, if its effect was to incur a present obligation or indebtedness against the defendant, was and is void; because there were no funds on hand, or legally levied, out of which any payments could have been made on it; and no vote of the electors had authorized the creation of such obligation or indebtedness, as required by the Constitution."

From the foregoing, we are of the opinion that the contracts entered into prior to July 1, 1921, the first of the fiscal year, were void and unenforceable as against the estimate thereafter made and approved for the subsequent fiscal year beginning July 1, 1921, since there were no funds on hand and no approved estimate out of which the salaries covered by the said contracts could have been paid at the time the board of

education attempted to enter into the said contracts. If, under the law, the members of a school board may, during one fiscal year, legally contract against estimates thereafter to be made and approved for subsequent fiscal years, it follows that such members could so contract for any number of years. We do not believe such course to be lawful without the assent of three-fifths of the voters of such district as is required by the Constitution of this state. That such a course is exceedingly dangerous in times of popular clamor and excitement and rivalry between communities and school districts and municipalities is obvious. Unwise improvement plans could easily involve such districts and municipalities in great financial difficulty and result in hampering and embarrassing and possibly preventing the needed functions. It is evident that the framers of the Constitution and of the laws of the state of Oklahoma have placed these reasonable limitations upon the expenditure of the funds, from year to year, with the purpose of preventing this condition. In our opinion the course of action revealed by the action of the board in this case is not only contrary to the provisions of section 26, art. 10, of the Constitution, and section 8638, Comp. Okla. Stat. 1921, but is contrary to the spirit and policy of sound fiscal management and should not be approved in the absence of specific constitutional authority.

The record discloses that contracts Nos. 1 to 21, inclusive, for teachers' salaries, and contract No. 30, for janitor's salary, were made and entered into prior to July 1, 1921, the first of the fiscal year, and prior to the making of an estimate for the fiscal year 1921 and 1922. We therefore hold that the trial court erred in rendering judgment on claims based on such contracts.

The record also discloses that contracts Nos. 22 to 29, inclusive, for teachers' salaries, and contracts 21 and 32, for janitors' salaries, and contracts Nos. 33, 34, and 35, for truck drivers' salaries, were entered into subsequent to July 1, 1921, or the first of the fiscal year, and that they were within the estimate made and approved for such purposes. We hold therefore, that the trial court properly rendered judgment for the plaintiff on causes of action founded thereon.

From the foregoing, it follows that the judgment of the trial court in favor of the plaintiff, as to causes of action Nos. 1, 3, 4, 5, 6, 8, 9 10, 11, 13, 14, 15, 16, 18, 19, 21, 22, 23, 24, 25, 26, and 27 must be reversed and remanded to the district court of Tulsa county, with directions to dismiss the same.

The judgment of the trial court in favor of the plaintiff, as to causes of action Nos. 2, 7, 12 17, 20, 28, 29, 30, 31, 32, 33, 34, and 35, is affirmed.

PHELPS, LESTER, CLARK, and RILEY, JJ., concur. HUNT, J., disqualified and not participating.