## MURRELL v. CITY of SAPULPA et al.

No. 22029. Opinion Filed March 17, 1931.

W. V. Pryor, for plaintiff in error.

C. B. Rockwood, City Atty., Ralph K. Robertson and Hayes, Richardson, Shartel, Gilliland & Jordan, for defendants in error.

McNEILL, J. This is an appeal from an order and judgment of the district court of Creek county rendered on December 13, 1930, in cause No. 18400, wherein F. E. Murrell, plaintiff in error, as a resident taxpayer of the city of Sapulpa, Okla., had subsequently intervened in said cause in which the American National Bank of Sapulpa, Okla., a corporation, was plaintiff, and the city of Sapulpa, municipal corporation, was defendant. Said plaintiff in error, as intervener, sought to vacate and set aside the judgment rendered in said cause in favor of said plaintiff and against the said city of Sapulpa. The judgment sought to be vacated was rendered August 3, 1929, and it appears that on said date the defendant city entered its appearance without service of summons and filed a general denial; that on the same day a judgment was entered in favor of the plaintiff and against the city of Sapulpa, in the sum of $256,948.59 and interest thereon from August 3, 1929, until paid; that said suit was instituted by said bank against said city upon various warrants theretofore issued by said city of Sapulpa, which warrants at the time of the institution of the suit were alleged to be owned by said bank.

Soon thereafter an application, after statutory notice, was filed in the district court of Creek county, cause No. 18459, styled,

"In the Matter of the Application of the City of Sapulpa, Creek County, State of Oklahoma, to determine the Existence, Character, and Amount of its legal outstanding judgment indebtedness and to issue its bonds to fund the same,"

—to refund the outstanding indebtedness of said city of Sapulpa, evidenced by said judgment in said cause No. 18400, and judgment was accordingly entered therein on the 7th of September, 1929; that thereafter, on the 17th of February, 1930, J. E. Faught, a taxpayer of the city of Sapulpa, commenced an independent action, being No.

18692, styled, "J. E. Faught v. City of Sapulpa, a Municipal Corporation," seeking to collaterally attack the said judgment rendered on August 3, 1929, in No. 18400.

From an adverse decision in the district court, said Faught appealed to the Supreme Court of this state, and after the transmittal of the mandate of this court to the district court of Creek county, the present cause was filed on behalf of the said intervener.

The petition in this latter case alleges in substance that the warrants sued on in cause No. 18400, which were reduced to judgment therein, and which were the basis of the funding bond issue, were null and void for the reason that they were issued beyond the approved estimate and for the reason that they were issued in excess of the debt limit of said city of Sapulpa for the year in which they were issued; that unless said judgment is vacated and the bonds declared void an annual tax levy will be made and extended, to the damage of the taxpayers of said city; and that if said judgment be vacated and a new trial given in said cause, the intervener can show a good and legal defense to said warrants.

This action of the intervener was permitted by the court for the reason that this court in the aforesaid cause of J. E. Faught v. City of Sapulpa, sustained the regularity of the funding procedure, but did not pass upon the validity of the warrants merged in said judgment.

In this case, to set aside aforesaid judgment, summons was regularly and duly served upon said plaintiff, the American National Bank of Sapulpa, defendant, city of Sapulpa, by said intervener. Thereafter said plaintiff and said defendant filed separate answers by way of general denial. The issues joined, said cause was regularly set for trial on the 16th day of December, 1930. The intervener introduced his evidence and rested. The plaintiff and defendant thereupon introduced their evidence, and the court rendered its judgment against said intervener denying the petition of said intervener to have said judgment vacated. A motion for new trial was duly filed, same was overruled, and the cause is before this court to reverse the action of the trial court in refusing to vacate said judgment.

The evidence introduced on behalf of the intervener in this cause was to the effect that no shorthand notes were made or recorded by the proceedings in case No. 18400; that a hearing was had; that the warrants were introduced in evidence, ordered canceled by the court clerk, and that said warrants have ever since the date of said judgment been in the possession of the court clerk and that each of the same has written across the face of the warrants "Canceled in judgment August 3, 1929. Ray H. Weakley. Court Clerk, C. C. Johnson, Deputy." This was all the evidence the intervener introduced in this case. Thereupon the intervener rested, and then said defendants introduced their evidence. Said plaintiff called as one of its witnesses, John R. Nicholson, a certified public accountant of the staff of W. O. Liggon & Company, who had been engaged as a public accountant for about 15 years, auditing accounts in cities and municipalities during that time, and doing general accounting work, having performed work for the officials of the city of Sapulpa, board of education of Tulsa, Wewoka, and Stillwater, and various and sundry counties of the state of Oklahoma. He testified that he audited the funding bond issue account to ascertain whether or not the warrants on which the American National Bank got a judgment against the city of Sapulpa on the 3rd of August, 1929, were legal warrants or not; that the warrants covered the fiscal years, 1920-1921, 1921-22, 1923-24, 1924-25, and 1925-26, respectively, stating that he examined each of the warrants separately, checking each of them separately. going back to the vouchers themselves, to the minutes of the city council, in ordering the items to be paid, and that every one of those warrants represented by the fiscal year within the estimate, legal, and outstanding as indebtedness against the city, as shown by the records, the excise board records and the various audits; that he had checked the estimate sheet in the county clerk's office, and the copy of the same at the city hall, and the appropriation ledger; that he took each voucher for every warrant, pay roll, and examined the invoices on the voucher; that there was not a warrant in any year that exceeded the estimate for such fiscal year. All these warrants covering these fiscal years were introduced in evidence. Each of the fiscal years was testified to by the witness, all to the same effect, that he checked each one of the warrants to ascertain whether or not they were issued on proper vouchers, and whether or not each warrant was issued against the specific estimate for which it was intended; and that each warrant was issued against the proper fund and within the proper estimate as shown by the records; that the records were complete with the exception of the 1920-21 financial statement and estimate for said city, which does not seem to have been in.

the county clerk's file, but was supplied from the city clerk's office where the same was on file.

Mr. Berry, vice president of the American National Bank of Sapulpa, testified, in substance, as follows:

That the American National Bank of Sapulpa had purchased from the city of Sapulpa the warrants in question and paid for the same at par and accrued interest prior to the time that the proceedings were commenced against the city; that evidence was adduced at the trial touching upon the validity of the warrants; that subsequent to the rendition of the judgment, the bank entered into an agreement with the city for the funding of said judgment, and bonds were issued in pursuance of that funding agreement; that on the hearing before the court to determine the validity of the judgment, as to whether or not said judgment was fundable. evidence was again introduced before the court, at which hearing certain taxpayers and particularly the Frisco Railway Company were present; that at said hearing evidence was introduced as to the validity of the warrants, that is, whether they were issued within the approved appropriation for the particular fiscal year in which they were issued: that the bonds were subsequently submitted to and approved by the Attorney General during the latter part of the year 1929. and the bonds were later delivered to the bank as the owner and holder in judgment, but later sold to the city of Sapulpa as an investment from its sinking fund; that the city of Sapulpa paid par and interest for the bonds, being the same amount the bank paid for the bonds; that the bank has no interest in the bonds, but they are held by the city as an investment in the sinking fund. This witness was not cross-examined.

C. D. Rockwood was called on behalf of the defendant and testified that he was attorney for the city of Sapulpa and appeared in the original action No. 18400; that he heard the evidence offered at that time by the plaintiff. and that it was substantially the same evidence as offered in the present hearing; that he was also present in the district court of Creek county, in the case No. 18459, in the matter of the application of the city of Sapulpa to determine the outstanding indebtedness, to issue bonds to fund the same, which was on the 7th day of December, 1929, appearing in that proceeding on behalf of the city; that in that proceeding judgment was entered and J. E. Faught, a taxpayer of the city of Sapulpa, filed an independent action attacking the

judgment in that case and the issuance of these bonds. This witness was not cross-examined.

The warrants for each fiscal year were introduced in evidence. which showed the warrant number, claim number, payee, date of registration, amount of principal, accrued interest to 6-30-29 and total principal and interest as follows:

Recapitulation.

| Series | Amount of Principal | Accrued Int. to 6-30-29 | Total Principal & Interest |
|---|---|---|---|
| 1920-21 | $ 51,177.54 | $25,152.84 | $ 76,330.38 |
| 1921-22 | 87,033.85 | 38,110.14 | 125,143.99 |
| 1923-24 | 21,362.47 | 6,889.69 | 28,252.16 |
| 1924-25 | 15,145.00 | 3,233.24 | 18,378.24 |
| 1925-26 | 6,689.63 | 1.126.14 | 7,815.77 |
| Total | $181,408.49 | $74,512.05 | $255,920.54 |

Plaintiff in error assigns as error the following:

"1. That said judgment is contrary to the evidence and against the weight thereof.

"2. That the evidence introduced as disclosed in the case-made hereto attached sustains the allegation of the petition of intervention of the plaintiff in error and judgment should have been rendered accordingly in favor of the plaintiff in error, the intervener in the trial court.

"3. For errors occurring at the trial and excepted to by the intervener, the plaintiff in error herein.

"4. That the court erred in overruling the plaintiff in error's motion for a new trial, to which the plaintiff in error excepted."

—and contends in his brief:

(1) That the judgment was and is collusive and fraudulent, and being such, might be vacated at any time.

(2) That as there was a deficit for the particular years in question, and as the warrants involved were not paid and other warrants were paid up to the amount of the funds collected, it must be presumed that the warrants were paid which were issued for claims first incurred.

(3) That the burden of proof was upon the city and bank to show that the claim represented by the warrants was created at a time when it together with all other lawfully created claims did not exceed the income or revenue for the year in question.

Plaintiff in error, however, admits in his brief that the warrants at the time of their issuance did not exceed the estimated income for such fiscal year.

The defendants in error contend in their brief:

(1) That the total amount of the warrants issued in any fiscal year does not exceed the estimated income for that year; but that the difficulty arose from the failure to collect all the taxes legally assessed.

(2) That the claims which are represented by the warrants were lawfully contracted and approved by the municipal officers, and that at the time said claims were incurred there was an unexpended balance in a fund created for the purpose for which the claim was incurred.

(3) That at the time the warrants were issued, in pursuance of such claims, there was an unexpended balance in the fund against which the warrants were issued, and that the warrants so issued, taken in connection with all other warrants issued against that fund, at no time exceeded the amount of the estimate for that particular fiscal year. And further contend that there can be no question as to the validity as to the warrants involved and as to the validity of the claims represented by the warrants.

It appears that the plaintiff in error relied upon the fact that the defendant city entered its appearance without service of summons and filed in said action a general denial, and that the matter then came on for hearing on the same day, and judgment was entered at the same time in favor of the plaintiff and against the city of Sapulpa, contending that said judgment was collusive and fraudulent, and being such, might be vacated at any time.

In reference to the question of fraudulent and conclusive judgment obtained against a city without the service of a summons, this court held in a sound and vigorous opinion by Mr. Justice Andrews, in the case of Faught v. City of Sapulpa, 145 Okla. 164, 292 Pac. 15:

"If a political subdivision of the state is sued in a court of competent jurisdiction having jurisdiction of the subject-matter of the action, and that political subdivision is brought before the court by proper service of summons, or if it files its answer which, by its terms, contests the claim and in no wise confesses the claim or the facts upon which the claim is based, and the court renders a judgment thereon within its jurisdiction, that judgment, unappealed from, is binding and conclusive upon the political subdivision of the state and upon the taxpayers thereof, subject only to the right to have the same vacated, set aside, or held for naught in a proper proceeding. On the other hand, if such a judgment is rendered without the service of a summons, or without the filing of such answer, that judgment is void for want of jurisdiction over the person of the political subdivision of the state, and its invalidity may be asserted at any time and in any sort of a proceeding."

This court, in said opinion, in language appropriate to a final consideration of this case, also states in part as follows:

"It must be kept in mind that the only party before the court in the refunding proceeding is the municipality, and the only other party authorized to appear before that court is the taxpayer. The claimant or creditor is not before the court, and there is no authority to bring the claimant or creditor before the court. If the court is authorized to say that the claim is valid and by so saying to give that order the effect and finality of a judgment, it must of necessity have the authority to say that the claim is invalid and that determination would have the same effect and finality as a judgment. * * * A refunding proceeding is no more than a proceeding to change the form of an evidence of existing valid indebtedness, to extend the due date thereof, and to fix the interest rate after the extension thereof. The court in determining the same does not give validity to indebtedness that was theretofore invalid, and, by refusing to approve a refunding, does not render invalid indebtedness that was theretofore valid. * * * When a court is called upon to render a judgment against a political subdivision of the state, the first question presented is, why, if the claim is valid, was it not paid from the income and revenue provided for that purpose? In order to state a cause of action, the petition must allege that the indebtedness incurred was not in excess of the income and revenue provided for that purpose, or that it was authorized by a vote of the people. * * * Whoever deals with the municipality does so with notice of the limitations on it or its agents' powers. All are presumed to know the law, and those who contract with it, or furnish it supplies, do so with reference to the law; and if they go beyond the limitations imposed, they do so at their peril."

In considering these warrants and claims, we quote from C. O. S. 1921, as follows:

Section 8595:

"All claims for money due from any county, township, city or incorporated town shall be itemized in detail, verified and filed for allowance with the proper authority not less than five days before the meeting of such body for such purposes. Such verified claims shall show in detail the amount due on each item, the date thereof, the purpose for which each item was expended, and such other facts as are necessary to show

the legality of such claim and each item thereof."

Section 8596:

"The proper authority of each county, township, city or incorporated town authorized by law to allow claims shall examine into each claim so filed for allowance at the meetings authorized by law to make such allowance, and if the same, or any part thereof, is found to be correct and is in compliance with section 1 of this act, the same shall be allowed for payment and a warrant issued therefor."

Section 8627:

"It shall be the duty of the state treasurer and each county, township, city, town or school district treasurer, and the treasurer of every board of education in this state, to pay on presentation any warrant or order properly drawn on any funds in his custody by virtue of his office, when there is cash sufficient in such fund to do so; and when any warrant or order is paid, such treasurer shall write across the face of the same in red ink, 'Paid,' and date and sign the same."

Section 8628:

"Whenever a warrant or order shall be presented to any treasurer named in the preceding section, and the same is not paid for the reason that there is not money sufficient in the fund on which same is drawn, the treasurer shall indorse on the back of such warrant or order, 'Not paid for want of funds,' number, date, and sign the same; and he shall set down in a book to be kept for that purpose, the number, amount, the date and upon what fund drawn, to whom payable, and the date when presented for payment; and such warrants or orders shall be paid in the order of their presentation and registration as shown by such book, and such book shall be known in each such office as the 'Warrant Register.' * * *"

Section 8635:

"Warrants and certificates of indebtedness may be issued to the amount of the estimate made and approved by the excise board for the current fiscal year, or to the amount authorized for such purpose by a bond issue."

In determining whether these various claims are valid, the record must be examined, and the rule applied as set forth in the case of Buxton and Skinner v. Board of Commissioners of Craig County, 53 Okla. 65, 155 Pac. 215. In that case the plaintiff had sold merchandise to the defendant, but when the claim was filed the income and revenue provided for the fiscal year for the purchase of supplies had been exhausted; the court said: .

"In our judgment, the sole question herein is whether the indebtedness was valid, at the time it was incurred. In determining the validity of such indebtedness, it will, of course, always be necessary to inquire whether, at the date of its assumption, there were unappropriated revenues to meet it, because, if there were not, there would be no liability resting upon the county, and the claimant would not be entitled to judgment. But if, at the time the contract was made, the indebtedness created thereby, together with all previous valid indebtedness, did not exceed the income and revenue of the county provided for such year, the claimant will be entitled to judgment for the amount of his claim"

—and held therein that the indebtedness was created at the time the contract was made and supplies furnished, and not when the claim was presented for payment.

This court, in Faught v. Sapulpa, supra, says:

"In the City of Woodward v. Manhire Grate & Equipment Co., 98 Okla. 83, 224 Pac. 356, this court held: 'If a valid contract for the sale of merchandise or equipment is entered into with a municipal corporation in accordance with the requirements of the law, it will not be invalidated by any subsequent diversion of the funds provided by the corporation for meeting the payments required by the contract.'

"In Gentis v. Hunt, supra (121 Okla. 71, 247 Pac. 358), this court said:

" 'Where an independent school district enters into contracts with teachers, truck drivers, and janitors for services to be performed during that fiscal year, and the aggregate amount of such contracts, together with other obligations legally created for such purpose, is within the limits of the estimate made and approved by the excise board, and where such contracts are in all other respects regular and lawful, they create a valid obligation against such district. The fact that the school district board thereafter carelessly or ignorantly exhausts the appropriation for such purpose before the completion of said contracts and then refuses payment 'for want of funds,' cannot militate against the right to compensation for services performed under such contracts. In legal contemplation, the total amount of such a legal contract is always on hand and reserved until lawfully paid out in discharge of the obligation of the district under such contracts.' "

So, in this case, if these various claims were incurred in accordance with the requirements of the law, their validity should be determined as of the date of the creation of the indebtedness and not as of the time when the claim was presented for payment, and if, at the time of the creation of such

debt, there were unappropriated revenues to meet the same, such a claim cannot be defeated by an exhaustion of the appropriation for such purposes.

In the case at bar it has been admitted that the warrants at the time of their issuance did not exceed the estimated income for such fiscal year.

In the case of Board of Education v. American Nat. Co., 135 Okla. 253, 275 Pac. 285, this court, speaking through Mr. Justice Riley, says:

"The fact, if it was a fact, that there was no money in the treasury to pay outstanding warrants, was nether alarming nor an emergency that would hamper the running of the school, for the whole theory of finance, as contemplated by chapter 78, art. 2, C. O. S. 1921, is that warrants may be issued for current expenses, whether the money to pay same is actually in the hands of the treasurer, or merely in the process of collection. Under sections 8628 and 8630, C. O. S. 1921, when the fund for payment of such warrants is not on hand, the warrants are so marked, and draw interest at 6 per cent. per annum until the time specified when the money is collected and advertised to be on hand. Thereafter payment of interest stops. * * *

"If the warrants by the resolution sought to be carried were drawn against an estimate made and approved, in due time the money to pay same would have been available. If the warrants were not so drawn, they were void. * * *"

There is no provision in the Constitution or the statutes of our state requiring claims or warrants against a municipality to be paid in the order in which they accrue.

The court on the hearing of the petition of intervention asking for the vacation of the judgment rendered on the 3rd of August, 1929, in favor of American National Bank v. City of Sapulpa, heard the detailed testimony that was offered and had occasion to examine the numerous warrants totaling this large amount set forth in the judgment rendered, and found in part as follows:

"That each and all of the warrants sued upon were duly and regularly issued within the final approved estimate for the fiscal year in which said warrants were issued; and that each of said warrants represent a valid and outstanding indebtedness of the defendant city of Sapulpa, and that each and all the warrants and claims based thereon were legal and valid warrants and none of them exceeded the estimated income for the year in which they were issued. * * *

"That there is on file in the office of the county clerk of Creek county, Okla., a financial statement and estimate for the city of Sapulpa for the fiscal year 1921-1922, and all years subsequent thereto, but that the original financial statement of the city of Sapulpa for the fiscal year beginning July 1, 1920, and ending June 30, 1921, was withdrawn by the city of Sapulpa some time in the year 1921-1922, and has become lost and misplaced; but that defendant's exhibit 'A' is a true and correct copy of such financial statement and estimate, which has at all times been duly and regularly kept in the office of the city clerk of the city of Sapulpa, Okla.

"The court further finds that each and all of the warrants originally sued upon in this action by the American National Bank, issued during the fiscal year 1920-21, were valid warrants when issued and were issued within the approved estimate for such year; and that said warrants at the time of the original commencement of this action were due and unpaid and then owned by the American National Bank of Sapulpa, Okla.

"The court further finds that each and all of the warrants particularly set forth and itemized in plaintiff's petition filed herein and particularly identified by the evidence in this cause on this day, were valid and binding obligations of the city of Sapulpa, duly and regularly issued within the approved estimate for such fiscal year, and that on the date of the commencement of this action and at the date the judgment was rendered herein on August 3, 1929, such warrants were due and unpaid, and were binding obligations of the city of Sapulpa * * *"

—and made findings to the same effect for each of the other fiscal years in question, and also finds:

"* * * The court further finds that all of said warrants are valid and that no void or illegal warrants or claims were included within said judgment so sued upon in said cause No. 18400, and therein reduced to judgment, and none of said judgments exceeded the debt limitation of said city for the years in which the same were issued, and none of said warrants were issued in violation of the Constitution and statutory provisions of the state of Oklahoma; but that, on the contrary, each and all of said warrants were lawful and vaild, claims and regularly and duly issued in strict accordance with the laws and Constitution of the state of Oklahoma.

"The court further finds that said judgment so rendered herein in this cause on August 3, 1929, was a valid judgment and that the claims therein merged in judgment were valid claims, and that by reason thereof the petition of F. E. Murrell to vacate said judgment should be and the same is hereby denied, and said petition is hereby dismissed."

This is an action of equitable nature, and

it does seem that in a case of this magnitude a record of the court proceedings of said trial should have been available and, if there had not been full and detailed evidence offered on the hearing of intervener's petition to vacate said judgment rendered on August 3, 1929, this court might very properly set aside said judgment. However, the trial court had before it for detailed examination every claim, every warrant, the financial statements and estimates for each ensuing fiscal year as approved and fixed by the excise board, at the hearing on the trial of intervener's petition to vacate said judgment, and the trial court found that all of these claims and warrants were legal and valid, representing actual obligations of the city, that said warrants and claims were regularly and duly issued, and said claims did not exceed the estimated income for the fiscal year for which they were issued, and that said judgment rendered on August 3, 1929, was not the result of any fraud or collusion, but was regularly and duly entered after due proof of the validity of the claim sued upon; and that each and all of said warrants were lawful and valid claims and regularly and duly issued in strict accordance with the laws and Constitutions of the state of Oklahoma.

In the furtherance of justice a judgment will not be set aside merely to allow another to make a technical objection or ineffectual defense, and if the result of a second trial must be the same as the first, it would be idle to disturb the judgment. American Oil & Refining Co. v. Liberty-Texas Oil Co., 112 Kan. 309, 211 Pac. 137.

There is competent evidence reasonably tending to support the findings of the trial court, and this court has frequently and uniformly held that where a case is tried to the court without the aid of the jury, the court's findings of fact will not be set aside if there is evidence reasonably tending to support the judgment.

The judgment of the trial court is hereby affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur.

HEFNER and CULLISON, JJ., absent.