VINA TREPP, Appellant, v. INDEPENDENT SCHOOL DISTRICT OF POCAHONTAS et al., Appellees (and two other cases).

No. 40731.

JANUARY 12, 1932.

Henry S. Sheed, C. B. McCartan, and Maurice J. Breen, for appellants.

A. J. Shaw, for appellee.

MORLING, J.—While the actions are against the School District and its officers and directors, we shall, for the purpose of the appeal, consider the district as the real and only defendant. Defendant's school building having burned, defendant entered into a contract with Arthur H. Neumann & Company for the construction of a new building at the agreed cost of $100,554.00. The district also entered into a contract with Carstens Brothers for the installation of a heating plant and plumbing and wiring in this "new school building at the agreed cost of $23,200.00."

The actions are triable here only on errors assigned and argued. The trial court's conclusions on the facts may not be disturbed if there is sufficient evidence to support them.

I. One of plaintiff's contentions is that the Carstens contract and the indebtedness thereby created were prior in point of time to the Neumann contract and indebtedness; that the Neumann indebtedness was therefore not in existence when the indebtedness on the Carstens contract was created, and cannot be taken into account in determining whether the Carstens contract would result in the creation of an indebtedness in excess of the constitutional limit. The trial court found that the Neumann contract preceded the Carstens Brothers contract, "or at least it must be said that the Carstens Brothers contract did not precede the Neumann contract." Both contracts are dated March 31, 1921. The minute book of the board of directors of the school district under date of March 31, 1921, records that a motion to let the Neumann contract was made, seconded, and carried. Immediately following is the record of a motion also seconded and carried, to let the heating, plumbing, and wiring contract to Carstens Brothers for $23,200. This motion included the provision: "This contract not to be binding until the bonds are sold and approved." The motion to let the Neumann contract provided: "It is further understood that the contractor is not to commence operations until bonds are sold and approved; that satisfactory surety bonds be given by the contractor by a reliable insurance company satisfactory to the board." At that time Chapter 347, Laws 38th G. A. (amended by Chapters 28 and 147, 39th G. A.) required public boards, in entering into any contract for a public building at a contract price in excess of $1,000, to require, as a condition precedent to

the making of such contract, that the contractor furnish and file bond as therein specified. The act provided:

"No public contract coming within the provisions of this chapter shall be of any validity until the bond mentioned herein has been executed and filed in the form and bearing the conditions as provided by this chapter, and until there is endorsed on said contract the written endorsement of the clerk of the district court * * * that such a bond, properly executed, is now on file in his office." Section 3.

At this point appellant's contention is that the Carstens bond was filed and approved April 13, 1921, and the Neumann bond filed April 20, 1921, and that under the statute the Carstens contract, and therefore the indebtedness under it, was in existence prior to the indebtedness on the Neumann contract. The question of fact thus presented is not triable here de novo. It will be noticed that the statute provides that not only the filing of the bond but the clerk's endorsement upon the contract is a prerequisite to the validity of the contract.

At the trial it was stipulated:

"That bonds for the faithful performance of both of said contracts * * * were filed by the Neumann Company and by Carstens on the 12th day of April, 1921."

Later, the clerk of the district court was called by plaintiff, and testified that he had in his office the bonds. Plaintiff thereupon offered them in evidence over objection, not ruled on, and asked "permission of the court to change the stipulation as heretofore made on the dates of the contractors' bonds." It was thereupon agreed, "in so far as the stipulation with reference to the filing of the bonds is modified by anything in these instruments, it may be withdrawn," but should "stand otherwise." The Carstens bond is dated April 12, 1921, and the Neumann bond April 19, 1921. Neither contract as set out by appellants in their abstract bears any endorsement of the clerk of the filing of the bond. Appellants by amendment to their abstract apparently intend to state that endorsed upon the Carstens contract is a clerk's certificate, dated April 13, 1921, of filing of bond. The amendment states that there is no endorsement by the clerk on the Neumann contract; that the clerk's certificate

948

dated April 20, 1921, is endorsed upon the bond (not the contract). The appellees, however, deny the correctness of this amendment, and expressly deny that the alleged certificates of the clerk were introduced in evidence and the correctness of the statements that there is no endorsement on the Neumann contract. Appellees set out a stipulation that the Carstens contract was executed March 31, 1931. The exhibits have not been certified to this Court. Plaintiffs stand here on allegations of their petition that the Carstens contract was entered into "on or about the 31st day of March, 1921." The contract is set out, and is dated March 31, 1921. The contractor was required to provide all material and perform all work for the heating, plumbing, and electric wiring "of the new school building located at Pocahontas, Iowa, for the Independent School District of Pocahontas, Iowa." By the terms of the Carstens contract there is made a part of it "Drawings, specifications, proposal, general conditions of contract, the specifications and plans as provided for in the specifications and plans for the general contract." The Carstens contract requires that "the various portions of said work shall be completed so as not to interfere with the work under the other contracts on said building, the entire contract to be thus fully completed not later than October 1st, 1921." Plaintiffs in their reply allege that defendant represented to Carstens Brothers that a tax as provided by the act later referred to created a fund of approximately $40,000, "which fund would be available to be used in payment of a part of the contract price of the contract Exhibit A. (Carstens Brothers) and a certain other contract entered into about the same time" with A. H. Neumann & Company. The reply further states:

"That at the time of the creation of the obligations as set out in plaintiff's Exhibit A there was also created a certain other obligation under and by virtue of a contract entered into between A. H. Neumann & Co. and the Independent School District of Pocahontas."

Appellants' pleadings, therefore, are that the indebtedness on the main contract and that on the Carstens contract were simultaneously created. On this record the finding of the District Court can not be set aside as not sufficiently supported. Therefore, in computing the amount to which the District would,

as a result of the Carstens contract, become indebted, the indebtedness on the Neumann contract, $100,554.00, must be included.

██ II. Plaintiff argues that taxes collected and uncollected taxes should be treated as assets for the purpose of determining the constitutional limitation of indebtedness, relying on Holst v. Consolidated District, 203 Iowa 288. It was stipulated that at the time in question:

"There was in the hands of the county treasurer taxes collected for said district amounting to $13,179.72, and that there was uncollected taxes on the 1920 tax and prior years, $15,-804.08."

It was stipulated that from March 31, 1921, to April 12, 1921, there were outstanding unpaid warrants amounting to $3,538.98 (it is not claimed that these warrants should be paid out of current revenues); that there was a cash balance to the district's credit of $246.45, exclusive of taxes; that there was due for tuition from other school districts $896. It was stipulated "that the defendant school district's expenses from March 31st, 1921, until July 31st, 1921, were $5,458.13 * * * from July 1, 1921, to December 31st, 1921, were $10,953.53, and * * * from January 1st, 1922, to March 31st, 1922, were $13,407.18. And that the total expenses from March 31st, 1921, to March 31st, 1922, exclusive of warrants issued under the contracts and indebtedness heretofore proven, was $30,108.94." The secretary of the school board testified:

"There was levied for teachers' salaries $16,000, for general expenses $6,000 and for interest $3600. In the year 1920 $25,600 was levied, 1921, $30,500, in 1922, $32,000, and in 1923, $34,000. From my examination there would not appear to be any substantial amount ever remaining after the payment of expenses. * * * I do not know how much of the $25,000 had been used in the payment of expenses on March 31st, 1921."

Director Schneeders testified:

"Q. Do you know approximately what the current expenses of the school were, during the years you were on the board? * * * A. Approximately $25,000 for the year, that is the levy that was made in the year 1920. In the year of 1921 it

was approximately $33,000. * * * The greater part of the addition was used for interest payments on the bonds issued. Because of the casualty in the destruction of the schoolhouse by fire, we had an additional expense of about $4500 to $5000 in building a building known as the 'Barracks.' ''

Another witness testified:

''Q. What do you find was the expense of operating the defendant schools during the fiscal year commencing July 1st, 1920, and ending July 1, 1921? * * * A. The expenditures made on the general fund were $25,245.23. During that period from July 1st, 1920, to December 31st, 1920, the expenditures were $14,338.90. For the period from January 1st, 1921, to July 1st, 1921, the expenditures were $11,806.33. From July 1st, 1921, to December 31st, 1921, the expenditures were $10,-953.53. And for the six months' period beginning January 1st, 1922, it was $22,100.65. * * * From January 1st, 1921, to March 31st, 1921, the expenditures were $6,158.19, and from March 31st, 1921, to July 1, 1921, $5,748.14.''

In Holst v. Consolidated District, 203 Iowa 288, we said:

''Undoubtedly, if the school was in operation, there were obligations then outstanding or necessary to be incurred for teachers' salaries, coal bills, and other proper items of general expenses which would be met by the collectible taxes in question. The appellees ask the court to assume that the amount of such outstanding current expenses would equal or exceed the amount of such collectible taxes. The only evidence on which we can base such an assumption is the testimony of the school treasurer that: 'There was a deficit in the running expenses of the independent school district from the 26th of March, 1920, to April 1, 1921. The amount was $6,809.64.' This evidence, however, is not sufficient to support the contention of the appellees that the item of $16,664.35 was all absorbed by outstanding liabilities for current expenses for the year 1920. We cannot assume, without proof, that there were such current expenses, and the amount thereof.''

In the case before us there was such proof. The taxes in question here, collected and uncollected, are shown to have been current revenues applicable and (as to collected taxes) actually

applied to the payment of current expenses. The law required the school to be kept open. The school was kept open. The law required contracts with teachers to be made in advance. It was the right and duty of the district to apply its current revenues to its current expenses. Grant v. Davenport, 36 Iowa 396, 401; Burlington Water Co. v. Woodward, 49 Iowa 58; Council Bluffs v. Stewart, 51 Iowa 385, 396; Phillips v. Reed, 107 Iowa 331; Windsor v. Des Moines, 110 Iowa 175; Trindle v. Cons. Sch. Dist., 200 Iowa 370; Swanson v. Ottumwa, 118 Iowa 161, 179, 185, 191.

The trial court found "that the current expenses for which the fund consisting of the tuition, the collected and uncollected taxes, aggregating $29,879.80, was created, was $30,108.94, thereby exceeding such amount of taxes and tuition; and for this reason such items are not available to the district as a credit against which they may create liability other than current expenses."

There was evidence to support this finding. The correctness of the computation, or of its basis as not being for the calendar year, is not argued. (44 C. J. 1136). On this record and on the authority of the cases cited, the plaintiff is not entitled to have the taxes and dues for tuition offset against the indebtedness which the district undertook to contract. It was stipulated that at the times in question "the school district owned certain property which was available for sale as follows * * * Total $5592." This amount was afterwards changed to $6842. While this stipulation included coal, $200, nevertheless the stipulation was that it "was available for sale." $6842 should be allowed as an asset available against the existing and proposed indebtedness.

 III. It was stipulated that the value of the taxable property as fixed by the next preceding tax list was $1,624,-418.00, 5 per cent of which would be $81,220.90. Plaintiff contends that this amount should be increased by $11,753.75, which is 5 per cent on the value of churches, public and parochial schools, and ball park. This property was not taxed. Plaintiff contends "that this property is in fact taxable property within the district, so far as the constitutional limitation provision is concerned." The constitutional provision is

952

"No county, or other political or municipal corporation shall be allowed to become indebted in any manner, or for any purpose, to an amount, in the aggregate, exceeding 5 per centum on the value of the taxable property within such county or corporation—to be ascertained by the last state and county tax lists previous to the incurring of such indebtedness." Article 11, Section 3.

The court is powerless to revise the tax list, or to add to it. Under the plain language of the Constitution, this contention cannot be entertained.

IV. It was provided by Chapter 335, 39th G. A., which took effect April 5, 1921:

"That the board of directors of any independent school district * * * in which there is at time of taking effect of this act, under process of construction, or in which because of destruction by fire prior to the taking effect of this act, it is necessary to construct a school building, for the completion of which building the funds of such district * * * are inadequate, may at their regular meeting in July or at a special meeting called for that purpose between the time designated for such regular meeting, and the third Monday in August, 1921, if a majority of the votes cast are in favor of the proposition at an election in which the proposition is submitted to the people, certify an amount not exceeding ten mills on the dollar of the taxable property of said district, and for a period of years not exceeding ten, to the board of supervisors; and the board of supervisors shall levy the amount so certified and for the years so designated, and the tax so levied shall be placed in a special schoolhouse fund and used only for the purpose of paying for the school site, the construction of said school building and the equipment thereof, * * *

"Sec. 2. Any such school district may anticipate the collection of taxes authorized to be levied for such special schoolhouse fund as in this act provided, and for that purpose the board of directors of said district may issue certificates or bonds with interest coupons attached, * * * secured by said taxes so levied, and shall be payable only out of such special schoolhouse fund hereinbefore named, which shall be pledged to the payment of the same, * * *. It shall be the duty of the said school district to hold the said fund separate and apart in trust for the

payment of said bonds or certificates and interest, and to apply the proceeds of said fund to the payment thereof. * * *''

Plaintiff urges that this act ''was passed for the express purpose of providing a legal method of raising funds to replace its school and to pay the contract warrants therefor; that the Carstens contract became a binding obligation on the 13th day of April, 1921, and the Neumann contract became a liability on the district on the 20th day of April, 1921, both subsequent to the enactment of this law; but that this question is immaterial because apparently the law took into consideration not only the contracts that were to be let, but it also was a provision for paying the costs of school buildings that were even in the process of construction; that the 10-mill levy for a period of 10 years would amount to more than $160,000; and that it provides for a tax fund in connection with the total cost of the building under both contracts.'' At the time the district undertook to become indebted for the construction of the building and the installation of the heating plant, wiring, and plumbing, the proposed indebtedness therefor, as will be seen from the tabulation post, would be in part void, under the constitutional prohibition. The legislature did not undertake the futile act of validating any indebtedness prohibited by the Constitution. In order to take advantage of the provisions of Chapter 335, 39th G. A., it was necessary for the board of directors to call an election and secure the authorization of the electorate. It was further necessary for the board of directors, at its July meeting in 1921, or later, to determine on and certify to the board of supervisors, and for the board of supervisors at its September meeting to levy, the tax. In the Neumann contract it was agreed that the Neumann Company should accept as part payment school warrants to the amount of $33,000, and that, if the additional tax was authorized, a proportionate amount of the funds derived therefrom should be applied on the $33,000 of school warrants. If the tax were voted and levied (as seems to have been done), it would be to partly pay an indebtedness which in part was then void by virtue of the Constitution. The most that could have resulted from such vote and levy would have been the realization of funds to be used in part payment of an indebtedness then partially invalid. A tax levied for the purpose of paying an invalid indebtedness is itself invalid. 44 C. J. 1119,

1145. The electors and taxpayers were powerless to give validity to an indebtedness which by the Constitution they were prohibited from incurring. The validity of the indebtedness must be determined as of the time when by the terms of the contract purporting to create it the indebtedness was incurred. See Murrell v. Sapulpa, (Okla.) 297 Pac. 241. No contract, express or implied, is involved in this action except the express contract of March 31, 1921. The invalidity of part of the indebtedness could not be cured by the process of voting a tax to pay or reduce the indebtedness, or by the issuance or the application of bonds or proceeds of bonds for that purpose.

V. The following tabulation results (the items which have not been discussed are not in dispute):

| | |
|---|---:|
| 5 per cent of taxable value | $81,220.90 |
| Cash on hand | 246.45 |
| Property available for sale | 6,842.00 |

| | | |
|---|---|---:|
| Limit of constitutionally authorized indebtedness | | $88,309.35 |
| Warrants | 3,538.98 | |
| Owing Hulse & Company | 3,648.12 | |
| Continental & Commercial Sav. Bank | 1,075.00 | |
| Amount of Neumann contract | 100,554.00 | |
| Amount of Carstens contract | 23,125.00 | |

| | |
|---|---:|
| Total resulting indebtedness would, therefore, be | $131,941.10 |

This Court has held that the municipality is liable for indebtedness otherwise valid up to the constitutional limit. It is only the excess that is void. McPherson v. Foster Bros., 43 Iowa 48, 72. The parties and issues necessary to a determination of the amount to which defendant is liable are not before the Court. The indebtedness attempted to be created by the two contracts exceeds the constitutional limitation. The warrants sued upon were given in payment of part of a total purported indebtedness part of which was void. Plaintiffs, therefore, are not entitled to recover upon those warrants. See 44 C. J. 1119, 1146. The foregoing tabulation is not to be interpreted as having any other effect than as sustaining the trial court's finding

for the purpose of this case that the total proposed indebtedness exceeds the constitutional limitation: The rights of the plaintiffs to recover as for a valid part of the indebtedness, their rights as between themselves and those claiming under the Neumann contract, are not before us for determination, and we are not to be understood as expressing any opinion with respect thereto.

None of the errors assigned is sustained.—Affirmed.

WAGNER, C. J., and EVANS, STEVENS, DE GRAFF, KINDIG, and GRIMM, JJ., concur.

FAVILLE, J., not participating.